ROBERT C. CARTER

*v.*

DONALD BORDENKIRCHER, *Warden, West Virginia Penitentiary*

(No. 13642)

Decided July 20, 1976.

*Marshall & St. Clair, E. G. Marshall* for Carter.

*Chauncey H. Browning*, Attorney General, *David P. Cleek*, Assistant Attorney General, for Bordenkircher.

NEELY, JUSTICE:

This appeal from a partial denial of habeas corpus relief in the Circuit Court of Cabell County presents two questions with regard to effective assistance of counsel, the first arising at the trial stage and the second arising upon appeal. While on the facts presented we find no ineffective assistance at the trial stage, we do find ineffective assistance at the appellate stage. Although we find a technical denial of constitutional rights in that petitioner did not receive a timely appeal, the effect of such denial is so speculative as to entitle the petitioner to no greater relief than resentencing, and therefore the judgment of the circuit court is affirmed.

A

In January 1973 petitioner, Robert C. Carter, was indicted for armed robbery in the Common Pleas Court of Cabell County, and because Mr. Carter was indigent, Mr. Hiram G. Williamson, a member of the Cabell County Bar, was appointed to represent the petitioner. The record demonstrates that Mr. Williamson was an experienced criminal lawyer who had conducted more than two hundred criminal trials during his distinguished career. On March 28, 1973, before petitioner was asked to plead to the indictment, Mr. Williamson made a verbal motion to the Common Pleas Court of Cabell County

that he be permitted to withdraw from the case. As part of his motion, Mr. Williamson said:

> "I believe that in the defense of this case, in presenting certain witnesses in his [Robert C. Carter's] behalf, I would be a party to the subornation of perjury, and I refuse to be under that cloud."

Mr. Williamson argued to the court as follows:

> "I believe from my experience that I can evaluate a criminal case, having tried more than two hundred, maybe three hundred, of them, and in this particular case I have advised this defendant for his own best interests the direction in which he should go. He flatly refuses to accept my advise [sic], and I feel from my evaluation of this case, there is an insurmountable obstacle to acquittal. I believe also that there should be under this indictment, from the evidence as I have reviewed it, prospective testimony, that there could be only one verdict, and that would be guilty as charged under the indictment. There could be no lesser finding.

> "And I believe further from my talks with this defendant and my attitude of which he is well aware that he has lost confidence in me, and I believe from his attitude he feels that probably I could not represent him. However, I am not making my motion upon that ground. I feel that I cannot conscientiously, in view of my knowledge of this case, try this case for this defendant."

The Common Pleas Court of Cabell County denied Mr. Williamson's motion to withdraw and Mr. Williamson then conducted the defense of the petitioner in a skillful and articulate manner. This Court has reviewed the entire transcript of the trial and finds that Mr. Williamson's advice to his client was well justified. The petitioner is a young, male Caucasian who allegedly participated in the robbery of a McDonald's hamburger stand in Huntington, West Virginia. No fewer than five eyewit-

nesses, one of whom was allegedly a coconspirator in the robbery, identified Mr. Carter. The eyewitnesses were of the same race as the defendant, had ample opportunity to observe the defendant who was unmasked and undisguised at the time of the crime, and the witnesses had no apparent reason to be untruthful. The defendant steadfastly maintained that he was not present at the scene of the robbery and, in support of that contention introduced testimony of his uncle, who confessed to being among the robbers himself, but testified that his nephew, the petitioner, was not present and did not participate.

This Court concludes that if there were ever a case in the criminal law which justified an attorney in advising his client to enter into a plea bargain, this was assuredly the case. From our reading of the record there were apparently no pretrial errors with regard to illegal search and seizure, illegal line-up procedure, or other traditional defects which would ultimately result in the suppression of evidence and release of the petitioner. In discharging his duties as appointed counsel, Mr. Williamson faithfully acquitted himself by encouraging the petitioner to make a plea bargain, as it was not unreasonable for Mr. Williamson to infer that the defendant's placing of arguably perjured testimony on the stand would ultimately result in a harsher sentence under West Virginia's armed robbery statute, *W. Va. Code*, 61-2-12 [1961], which vests broad discretion in the trial judge to impose a determinate sentence in the penitentiary of ten years to life.

There may have been other ways of handling this particular case; the Court does not find that Mr. Williamson's method of proceeding was the only possible method, but we do find that Mr. Williamson demonstrated more than "the normal and customary degree of skill possessed by attorneys who are reasonably knowledgeable of criminal law" as mandated in *State v. Thomas*, W. Va., 203 S.E.2d 445 (1974).

Petitioner asserts that his disagreement with counsel with regard to the manner of conducting petitioner's defense undermined the attorney-client relationship and prejudiced the petitioner in the trial of his case. While in a world of limitless resources and under-employed legal talent a more perfect result would have been achieved by granting Mr. Williamson's motion to withdraw from the case, this Court finds that under the West Virginia law with regard to appointment of counsel for indigents the common pleas court did not abuse its discretion in requiring Mr. Williamson to try the case. Furthermore, from a review of the entire record we find as a matter of fact that any possible error in this regard was harmless beyond a reasonable doubt.

The petitioner alleges he had at one time worked for the McDonald's hamburger stand which was robbed, although the assistant manager testified that he had never seen the petitioner before. The petitioner argues in support of his allegations of ineffective assistance of counsel that Mr. Williamson should have subpoenaed petitioner's work records from McDonald's in order to undermine the credibility of the manager's testimony by demonstrating that petitioner had worked at the hamburger stand.

At the habeas corpus hearing it was demonstrated that the petitioner did, in fact, work for approximately three months at the McDonald stand which was robbed; however, the Court finds that Mr. Williamson's failure to anticipate every possible avenue of impeachment of the prosecution's witnesses on cross-examination did not amount to ineffective assistance of counsel. By virtue of the overwhelming weight of other evidence this Court cannot conclude that there would have been a different result had Mr. Williamson anticipated the testimony in question.

The petitioner alleges that the prosecuting attorney made a specific point in his concluding argument that Robert Carter's testimony was absurd because of the

allegation that he had worked at McDonald's. The prosecuting attorney said to the jury:

> "One other thing, and this to me is the most preposterous thing in the entire defense. If Donald [sic] Carter worked at McDonald's, why in the world didn't he prove it? He was a witness. Why didn't he prove it? I don't know why, and even the more preposterous part of it is: what in the world would have been the reason that his former boss would have sat there and said, 'I never saw the guy in my life?' What's in it for Murphy to say this? It's a bold face lie. Murphy's still employed in a responsible position with the Ashland Fire Department. He's an honest man. He obviously had to pass some kind of examination for responsibility in his former life and, you know, personal honesty, in order to hold a position like that. Why would he have sat there and said, 'I never saw the guy until he came in and held me up that night'? If you're the manager on a night shift at a place like that, where you always clean up—and apparently everybody's helping, from the testimony. Are you telling me that a man can work there for six or eight months and you'd never know you saw him? It's preposterous."

We do not hold that a lawyer's failure to investigate a material element in his client's defense cannot constitute ineffective assistance of counsel; in fact, as the Third Circuit said in *Moore v. United States*, 432 F.2d 730, at 739 (1970) " ... [R]epresentation involves more than the courtroom conduct of the advocate. The exercise of the utmost skill during the trial is not enough if counsel has neglected the necessary investigation and preparation of the case or failed to interview essential witnesses or to arrange for their attendance." However this Court takes notice that in the practice of criminal law it is not always possible for a lawyer to investigate every avenue suggested to him by his client. A lawyer must use his own skill and judgment to determine what evidence is relevant and what facts will materially aid

his client in demonstrating innocence. Under the facts of this case introduction into evidence of conclusive proof that the defendant worked for McDonald's stand would not have changed the result one iota.

B

Finally the petitioner asserts that his constitutional rights have been denied because he was not given a timely appeal to this Court from his conviction. We agree that the petitioner was not afforded a timely appeal but we further find that the petitioner was at least in part at fault and that circumstances beyond the control of the State also contributed to the delay. Immediately after petitioner's conviction Mr. Williamson became seriously ill and although he filed a number of post-trial motions, he was unable to argue them for over a year. Finally in May 1974 Mr. George D. Beter, a member of the Cabell County Bar, was appointed counsel for the petitioner in the post-conviction proceedings, and he gave a brief resume of petitioner's social and economic background in support of his plea for a suspended sentence and probation. The petitioner, however, was sentenced to a term of ten years upon the jury verdict. The court granted a stay of execution during which time Mr. Beter filed a notice of intent to appeal on behalf of petitioner, but Mr. Beter did not prepare the required petition and note of argument necessary to afford petitioner an effective appeal.

Mr. Beter asserted in the habeas corpus proceeding that he believed he had been appointed for the purpose of arguing the post-conviction motions and filing the notice of intent to appeal, and testified that he was not aware that he had been appointed to perfect an appeal. In fact Mr. Beter maintained that he had discussed with petitioner's mother the possibility of perfecting an appeal as retained counsel; however, petitioner's mother did not retain Mr. Beter and, consequently, petitioner languished in the penitentiary under the erroneous assumption that Mr. Beter would perfect an appeal as appointed counsel, while Mr. Beter erroneously assumed

that he had discharged his duties to the court and to petitioner. Meanwhile the court was unaware that no appeal had been presented until a writ of habeas corpus was filed in this Court on April 22, 1975 and made returnable by us to the Circuit Court of Cabell County. Mr. Beter testified below that he had visited the petitioner in the Cabell County jail and discussed petitioner's appeal with him exclusively from a sense of moral obligation rather than because he was appointed to prosecute the appeal. From the record, petitioner has made his case that Mr. Beter led petitioner reasonably to rely to his detriment on Mr. Beter's prosecuting his appeal.

The Court finds that under West Virginia's statutory scheme for the appointment of counsel for indigents *W. Va. Code,* 62-3-1 [1975] it frequently occurs that a defendant's case rests in limbo because of confusion on the part of counsel and the court with regard to the prosecution of an appeal. The petitioner in this case was also at fault for the overly untimely perfection of his appeal by virtue of electing to proceed in this habeas corpus action rather than by informing the court that his appeal had not been prosecuted with vigor and requesting appointment of counsel for the prosecution of the appeal.[1]

Under the law of this State, resentencing has been the traditional remedy in habeas corpus for that ineffective assistance of counsel which deprives a convicted defendant of his opportunity to prosecute a timely appeal. *State ex rel. Bradley v. Johnson,* 152 W. Va. 655, 166 S.E.2d 137 (1969); *State ex rel. Bratcher v. Cooke,* 155 W. Va. 850, 188 S.E.2d 769 (1972). Resentencing gives the convicted defendant a new opportunity to appeal and, in most cases, restores to him all that he has lost. We recognize, however, that there are circumstances in

---

[1] Recent extensions of Sixth Amendment doctrine give calculating defendants the opportunity to divert attention from fundamental issues of guilt and innocence by channeling judicial resources into the resolution of nice questions of legal competence. For a discussion of this problem and its adverse consequences for courts *see* Macklin Fleming, *The Price of Perfect Justice,* at 60 and 73–76.

which resentencing would be an inadequate remedy and would, in fact, make a mockery of justice.[2] No such circumstances are present in this case, and upon review of the entire record the Court concludes that it is an unduly harsh remedy against the State to discharge the petitioner on the sole ground that he was not afforded a timely appeal.

At first blush it might appear that this opinion presents an overly conservative view in dissonance with our modern solicitous regard for individual rights. However, we live in a world with limited resources and a perfect result can seldom be achieved; what we are seeking is a fair and just result in every case. The facts of this case demonstrate the palpable need in West Virginia for a well-managed public defender system in which a group of State-supported lawyers can handle an indigent's case from beginning to end with all of the advantages which accrue to the large-scale practice of law. If such a public defender system had existed at the time petitioner was indicted, his differences with Mr. Williamson would have resulted in the assignment of another member of the public defender staff who arguably would have been more disposed to petitioner's approach to the case, and the same group of public defenders would have

---

[2]For example, resentencing would be an inadequate remedy when a defendant was deprived initially of his opportunity to appeal a trial court's denial of his motion for a new trial on grounds of newly discovered evidence, if, at the time of resentencing, the witness who possessed the newly discovered evidence were dead. While approving of the resentencing remedy, the 4th Circuit Court of Appeals also recognized, implicitly, that this remedy would not meet every circumstance. In shaping relief for convicted defendants with claims similar to petitioner Carter's, that court held:

"The granting of writs of habeas corpus should be withheld for a reasonable period in which to permit the Commonwealth to grant belated appellate review. If, however, belated appellate review is not granted, or cannot be granted, because of the impossibility of obtaining a transcript of the original trial or an adequate substitute, then the writs should issue." *Shiflett v. Commonwealth of Virginia,* 433 F.2d 124, at 129 (1970).

immediately prosecuted an appeal to this Court. However, the legislature has not seen fit to design a modern public defender system and in this case the petitioner does not raise the question of whether the method of appointing counsel is so defective as to deny him due process of law.

Given the cumbersome nature of the statutory scheme for appointment of counsel no hard and fast rule with regard to appropriate relief for ineffective assistance of counsel on appeal can be formulated. The court must look to whether the denial of a timely appeal prejudiced the defendant. There is such a thing as a frivolous appeal, and while all appeals have some chance of success, the question of substantial appeals as opposed to frivolous appeals must be resolved on the basis of probabilities. Furthermore, armed robbers are dangerous, and law abiding citizens are entitled to protection which should not lightly be annulled by negligence on the part of appointed counsel who are not under the control of the State.

Accordingly we hold in this case that the proper remedy for the petitioner is the relief fashioned in the lower court of resentencing and appointment of counsel to prosecute his appeal.[3] However, we are greatly concerned that this type of deprivation not occur in the

---

[3]The July 21, 1975 final order of the Circuit Court of Cabell County, directing that petitioner Carter be resentenced and that counsel be appointed to prosecute his appeal, is well within the scope of *W. Va. Code* 53-4A-7 [1967], which gives the court in habeas corpus considerable discretion in shaping appropriate relief:

" ... When the court determines to deny or grant relief, as the case may be, the court shall enter an appropriate order with respect to the conviction or sentence in the former criminal proceedings and such supplementary matters as are deemed necessary and proper to the findings in the case, including, but not limited to, remand, the vacating or setting aside of the plea, conviction and sentence, rearraignment, retrial, custody, bail discharge, correction of sentence and resentencing, or other matters which may be necessary and proper ...."

future. Therefore, we mandate that in future cases, unless good cause be shown to the trial court, the same defense counsel who is appointed under the current statutory scheme to represent the accused in the trial court should, immediately upon defendant's conviction and the disposition of post-trial motions, be reappointed to prosecute such appeal as the circumstances may warrant.[4]

Under a system in which the same counsel represents a petitioner both in the lower court and in this Court there is far greater assurance of timely prosecution of an appeal as well as continuity in the development of the case both at the trial and the appellate level. Frequently lawyers' conduct in the trial court is aimed at making a record for appeal, particularly when the chances of winning in the lower court are minimal. A lawyer who has deliberately designed his strategy with a view to appellate remedies should see the case through, as the next lawyer may not be able to infer from a cold record exactly what alleged error trial counsel had in mind in developing the record in the way he did.

For the foregoing reasons the judgment of the circuit court is affirmed.

*Affirmed.*

---

[4]For a discussion of the complicated issue of coordinating the efforts of trial and appellate counsel see American Bar Association Commission on Standards of Judicial Administration, *Standards Relating to Appellate Courts* at 41–45 (Tentative Draft, 1976).