JOE CANNELLAS

*v.*

ARTHUR L. MCKENZIE, *Warden,*

WEST VIRGINIA PENITENTIARY

(No. 13888)

Decided June 21, 1977.

*Joseph S. Beeson, Love, Wise, Robinson & Woodroe,* for relator.

*Chauncey H. Browning,* Attorney General, *John Mac-Corkle,* Assistant Attorney General, for respondent.

NEELY, JUSTICE:

The petitioner, Joe Cannellas, was tried by a McDowell County jury upon an indictment for forcible rape of a sixteen year old girl. The jury returned a verdict of guilty with a recommendation of mercy, and on December 19, 1975, the petitioner was sentenced by the Circuit Court of McDowell County to a term of from ten to twenty years in the West Virginia Penitentiary. Petitioner then filed a petition for a writ of error in this Court, and on September 13, 1976, the petition was denied. The primary ground alleged for habeas corpus relief is that petitioner was ineffectively represented by court-appointed counsel in both the trial court and on appeal of the original conviction to this Court. We find that petitioner's allegations of ineffective assistance of court-appointed counsel are well founded, and accordingly we grant the writ of habeas corpus prayed for.

There are numerous instances of ineffective assistance of counsel at the trial stage. While no one instance of

ineffective assistance would have entitled petitioner to habeas corpus relief, we can infer that petitioner did not have a fair trial overall, due to ineffective assistance of counsel. However, the most serious violation of petitioner's right to effective representation under *U.S. Const.*, Amendments VI and XIV, § 1, and *W. Va. Const.*, Art. III, § 14, was in the failure of counsel on appeal to assign as error the insufficiency of the evidence supporting petitioner's conviction.

The record in this case discloses that on the afternoon and evening of September 17, 1975, and the morning of September 18, 1975, the petitioner and the prosecuting witness, a Miss Vicki Hagy, were present at a number of the same social events. The evidence is uncontroverted that they both attended the Big Creek High School homecoming game where alcoholic beverages were consumed and marijuana was smoked. Thereafter the prosecuting witness rode with some other companions in petitioner's pickup truck to a small house used by young people for social events. The petitioner and Miss Hagy spent the evening in the company of others at this house where alcoholic beverages were consumed, and both she and the petitioner smoked marijuana.

After the party, at about midnight, the petitioner, Miss Hagy, a young lady named Patty Pruitt, and a young man named Tim Stacy left the party in petitioner's truck for the alleged purpose of taking Miss Hagy and Miss Pruitt home. After driving a few miles, Miss Pruitt left the company of the other three to join some friends whom she had recognized along the road, and the petitioner, Mr. Stacy, and Miss Hagy proceeded in petitioner's truck in the general direction of Miss Hagy's home. The evidence then is in sharp conflict as Miss Hagy testified that petitioner and Mr. Stacy took her against her will to Berwind Lake, and that petitioner forcibly raped her against her will in the front seat of the truck. Petitioner testified that he had intercourse with Miss Hagy, but that the intercourse was voluntary

and Mr. Stacy testified that he also had intercourse with Miss Hagy at her instance and with her consent.

At trial, Miss Hagy's mother testified that on the morning in question her daughter came in between the hours of 1:00 a.m. and 2:00 a.m. and that her eyes were red and she was emotionally upset. Mrs. Hagy also testified that on the morning in question she was enraged at her daughter for being out so late and that she had gotten a belt for the purpose of administering corporal punishment to the daughter. She stated, however, that upon seeing the emotional condition of her daughter, she had forborne the infliction of such punishment. Mrs. Hagy testified that later that morning after arising, her daughter told her about the alleged rape and that she and her daughter then went to a Justice of the Peace to swear out a warrant. Miss Hagy testified at trial that she had had intercourse with three other men, and that with the exception of the first she had known both of the others for a substantial period of time.

At trial the prosecution introduced the undergarment and bluejeans worn by the prosecuting witness on the night in question and, without objection from the defense attorney, established a chain of custody demonstrating that the garments had been in the custody and control of Miss Hagy and her mother from the time of the alleged rape until the time of trial; that they had been washed; and, that no special care had been taken to preserve them in their original condition.

Although defense counsel did not challenge the chain of custody, he did attempt to impeach the credibility of Miss Hagy's testimony that the undergarment and bluejeans were torn by the petitioner at the time of the alleged rape. To impeach Miss Hagy's testimony, defense counsel called Rosie Wyseloiff to the stand. She had been present at the preliminary hearing in this matter and could recall Miss Hagy's testimony. Mrs. Wyseloiff testified that at the preliminary hearing Miss Hagy stated she did not bring the clothing with her because the clothing was not torn and would not have proved any-

thing. We find that trial counsel's handling of the one piece of corroborating evidence tending to prove petitioner's guilt was such as no trial attorney reasonably skilled in the practice of criminal law would have countenanced.[1]

There is one further and fatal example of ineffective assistance at trial. During the testimony of Mr. Tim Stacy, it became obvious that Mr. Stacy had been invited by the prosecuting authorities to take a lie detector test. Also, during the course of cross-examination of the defendant, the defendant inadvertently indicated that Tim Stacy had been looking for him because Mr. Stacy had been invited to take a lie detector test and wanted the defendant's advice. In spite of this prejudicial evidence concerning lie detectors, none of which was elicited deliberately by either side, defense counsel did not move for a mistrial, but chose instead to ask for a limiting instruction from the court. We believe that reasonably skillful trial counsel would have moved for a mistrial.

---

[1] More witnesses could have been called to substantiate Mrs. Wyseloiff's version of Miss Hagy's preliminary hearing testimony. As far as the chain of custody problem is concerned, the general rule has recently been restated as follows:

When an object or article has passed through several hands while being analyzed or examined before being produced in court, it is not possible to establish its identity by a single witness, but if a complete chain of evidence is established, tracing the possession of the object or article to the final custodian, it may be properly introduced in evidence. Syllabus pt. 2, *State v. Charlot*, ___ W. Va. ___, 206 S.E.2d 908 (1974).

This rule is applicable to this case since it is clear that Miss Hagy's torn clothing passed through several hands before being introduced in evidence. We cannot say from the record that the State failed to establish the torn clothing's chain of custody. Rather, we note the substantial possibility that the State might have failed to establish chain of custody if defense counsel had aggressively pursued this point. In short, defense counsel did not fulfill his obligation in representing petitioner to put the State to its proof with respect to the torn clothing. Defense counsel should have raised this question initially by moving to suppress the evidence, and later by objecting to its admission at trial.

Other instances of ineffective assistance of counsel include trial counsel's failure to interrogate prospective members of the jury about whether they had read newspaper articles prejudicial to the defendant immediately before the trial, and trial counsel's introduction before the jury of the fact that the petitioner was married and had two children. We find it difficult to discern any tactical reason for bringing out petitioner's marital status in light of West Virginia's rule that it is reversible error for the State over defense objection to bring before the jury in a rape prosecution evidence of a defendant's marital status. *See, State v. Dorton,* 125 W. Va. 381, 24 S.E.2d 455 (1943).

Except in extraordinary circumstances, on a petition for habeas corpus, an appellate court is not entitled to review the sufficiency of the evidence. *Riffle v. King,* 302 F. Supp. 992 (N.D.W.Va. 1969), and *Young v. Boles,* 343 F.2d 136 (4th Cir. 1965). That question is an appropriate one for review on appeal. However, our reading of the transcript in this case indicates that the question of the sufficiency of the evidence is a crucial issue which should have been raised and decided by this Court on appeal. This issue was not raised in appellant's application for a writ of error and consequently was not decided in our denial of the writ. The law with regard to conviction of a defendant upon the uncorroborated evidence of a prosecuting witness has been developing throughout the United States for many years. We have not reviewed that question since the case of *State v. Beacraft,* 126 W. Va. 895, 30 S.E.2d 541 (1944), and it is possible that upon detailed review of the record we would have established certain guidelines concerning the circumstances under which uncorroborated testimony of a prosecuting witness may be sufficient.[2]

---

[2] Rape corroboration requirements continue to be hotly debated in many jurisdictions and are perhaps deserving of reëxamination here. For a sampling of the voluminous literature on the subject *see* Note, "The Rape Corroboration Requirement: Repeal Not Reform," 81 *Yale L. J.* 1365 (1972); Note, "Corroborating Charges of Rape," 67 *Colum. L. Rev.* 1137 (1967); Note, "Rape and Rape Laws:

We do not decide that issue in this habeas corpus proceeding, but rather we find the appellate counsel's failure to raise the issue such a basic denial of the right to effective assistance of counsel on appeal that we have no recourse but to grant the writ. The State's obligation when an indigent is accused of a crime is to provide counsel who will conduct himself in such a way that he exhibits "the normal and customary degree of skill possessed by attorneys who are reasonably knowledgeable of criminal law. . . ." Syllabus pt. 19, *State v. Thomas,* 157 W. Va. 640, 203 S.E.2d 445 (1974). We believe that any lawyer reasonably knowledgeable of criminal law would have raised the question of the sufficiency of the evidence on appeal. Furthermore, we cannot say that if counsel had challenged the sufficiency of the evidence on appeal that it would not have changed the outcome of the case. Thus we cannot regard the failure to challenge the sufficiency of the evidence as harmless error.

We do not find in this case, as we did in *Carter v. Bordenkircher,* ____ W. Va. ____, 226 S.E.2d 711 (1976) that the injury from ineffective assistance of counsel was entirely speculative or theoretical, but that to the contrary there was a substantial probability of actual injury. *United States Constitution,* Amendments VI and XIV, § 1 and *West Virginia Constitution,* Art. III, § 14 guarantee that an indigent accused of a crime receive effective assistance of counsel. *Gideon v. Wainwright,* 372 U.S. 335 (1963), and *State ex rel. May v. Boles,* 149 W. Va. 155, 139 S.E.2d 177 (1964). This is a responsibility of the State, and where the State has failed in its duty, relief will lie in habeas corpus. Accordingly the writ as prayed for is granted.

*Writ granted.*

Sexism in Society and Law," 61 *Cal. L. Rev.* 919 (1973); and Note, "Repeal of the Corroboration Requirement: Will It Tip the Scales of Justice?" 24 *Drake L. Rev.* 669 (1975). And for a good discussion of the problem in a recent, significant case *see Arnold v. United States,* 358 A.2d 335 (D.C.App. 1976), and in particular, the cogent dissent of Associate Judge Mack, *id,* at 348.

McGRAW, JUSTICE, *dissenting:*

My dissent from the decision of the Court's majority opinion in this case is compelled by the unrealistic and unjustifiable findings, reasoning and conclusions claimed to have been deduced from the record before the Court. A careful examination, screening and analysis of the record, the accepted and lawful basis on which a court's judgment and action are based, do not sustain and substantiate the grounds and bases employed by the Court in granting the writ of habeas corpus. On September 13, 1976, a petition for a writ of error from the judgment of the Circuit Court of McDowell County in behalf of this petitioner was denied by the Court. In the petition and the amended petition for a writ of habeas corpus three basic grounds for relief are asserted: (1) Lack of credible evidence to support the conviction; (2) ineffective assistance of counsel; and (3) the trial court's imposition of a void sentence. Without doubt a full and complete review of the entire record on writ of error may have been a more meaningful approach to resolving problems incident to any trial errors and improprieties. If the imposition of sentence is faulty and illegal, resentencing may provide basis for a renewed petition for a writ of error and an opportunity to examine and consider the entire record, without voiding the proceedings by a grant of habeas corpus on bases which I find to be insufficient and unsubstantial.

The majority opinion, noting "numerous instances of ineffective assistance of counsel at the trial stage," concedes that "no one instance of ineffective assistance would have entitled petitioner to habeas corpus relief", and then states that "we can infer that petitioner did not have a fair trial overall, due to ineffective assistance of counsel." Defense counsel in this case were appointed by the trial court and the record is the best evidence as to the quality of the legal services performed for defendant.

The majority opinion states that "the most serious violation of petitioner's right to effective representation

... was in the failure of counsel on appeal to assign as error the insufficiency of the evidence supporting petitioner's conviction." Later the opinion observes that "Except in extraordinary circumstances, on a petition for a writ of habeas corpus, an appellate court is not entitled to review the sufficiency of the evidence ... That question is an appropriate one for review on appeal." The majority summarizes its opinion on this phase of the case by stating:

> "... We believe that any lawyer reasonably knowledgeable of criminal law would have raised the question of the sufficiency of the evidence on appeal. Furthermore, we cannot say that if counsel had challenged the sufficiency of the evidence on appeal that it would not have changed the outcome of the case. Thus we cannot regard the failure to challenge the sufficiency of the evidence as harmless error."

Further, the majority states:

> "We do not find in this case, as we did in *Carter v. Bordenkircher*, ____ W. Va. ____, 226 S.E.2d 711 (1976) that the injury from ineffective assistance of counsel was entirely speculative or theoretical, but that to the contrary there was a substantial probability of actual injury...."

The determinative decision-making difference between the *Carter* case and the present case is shadowy and gray. In the *Carter* case the attorney failed to timely appeal an armed robbery conviction. In the present case the attorney filed his petition for a writ of error and his supporting note of argument in this Court on March 19, 1976, citing two errors and "other errors apparent upon the record." The writ of error was refused on September 13, 1976. Full judicial review was thereby denied. Point two of the syllabus in the *Carter* case reads as follows:

> "In determining appropriate relief in habeas corpus for ineffective assistance of counsel in not prosecuting a timely appeal, the court should consider whether there is a probability of actual injury as a result of such denial, or alternatively

whether the injury is entirely speculative or theoretical, and where the denial of a timely appeal was probably harmless, except in the case of extraordinary dereliction on the part of the State the appropriate remedy is not discharge but such remedial steps as will permit the effective prosecution of an appeal."

The "remedial steps" referenced in the *Carter* opinion are indicated in 226 S.E.2d, at 717, in *State ex rel. Cogar v. Haynes*, 154 W. Va. 805, 180 S.E.2d 492 (1971), and in W. Va. Code, 53-4A-7. The statute reads in part as follows:

"(c) When the court determines to deny or grant relief, as the case may be, the court may enter an appropriate order with respect to the conviction or sentence in the former criminal proceedings and such supplementary matters as are deemed necessary and proper to the findings in the case, including, but not limited to, remand, the vacating or setting aside of the plea, conviction and sentence, rearraignment, retrial, custody, bail, discharge, correction of sentence and resentencing, or other matters which may be necessary and proper. In any order entered in accordance with the provisions of this section, the court shall make specific findings of fact and conclusions of law relating to each contention or contentions and grounds (in fact or law) advanced, shall clearly state the grounds upon which the matter was determined, and shall state whether a federal and/or state right was presented and decided. Any order entered in accordance with the provisions of this section shall constitute a final judgment, and, unless reversed, shall be conclusive."

The *Carter* opinion was rendered on July 23, 1976, some four months after the petition for writ of error was filed for judicial review in the present case. The admonitions and teachings of the *Carter* case were not then available to attorneys and trial judges when the *Canellas* case was brought to this Court on a petition for a writ of error.

The majority opinion refers to "numerous instances of ineffective assistance of counsel at the trial stage," but that no one instance of ineffective assistance of counsel at the trial would justify habeas corpus relief. The opinion infers that "petitioner did not have a fair trial overall, due to ineffective assistance of counsel." The opinion, after a general review of the trial evidence, descends to three particular items of evidence on which according to a majority, the court-appointed counsel did not render effective assistance to petitioner at his trial. These three items warrant review.

The panties and jeans worn by the victim on the occasion of the alleged rape were identified by her mother and admitted in evidence as state exhibits. The mother testified she found the clothing items at the foot of her daughter's bed. She washed them and kept them in her custody until produced at the trial. The opinion comments that no special care had been taken to preserve the clothing items in their original condition, that defense counsel did not challenge the chain of custody of the clothing, and that the victim did not have the items of clothing at the preliminary hearing. The mother did not testify that the jeans were torn. She testified that the panties were in the torn condition when she found them at her daughter's bed. The mother cannot be faulted for washing the garments. She testified the garments were continuously in her custody until brought to the trial. If they had been brought to the preliminary hearing and handled by interested parties, the chain of custody would have been interrupted and additional evidence as to identity and custody may have been required. The opinion concludes on this point that the defense "counsel's handling of the one piece of corroborating evidence tending to prove petitioner's guilt was such that no trial attorney reasonably skilled in the practice of criminal law would have countenanced." In a footnote the opinion observes that the "torn clothing passed through several hands before being introduced in evidence." Let the record speak for itself on this item. The opinion suggests that defense counsel should have

moved to suppress the evidence and should have objected to its admission at the trial. *State v. Charlot*, ____ W. Va. ____, 206 S.E.2d 908 (1974), is cited on the chain of custody rule, but that case on the facts therein and the rule stated is totally inapplicable to the present case. The items of clothing were relevant and pertinent evidence. When the mother of the victim testified where she had found the clothing, that the condition of the clothing items was unchanged except she had washed them, and that the clothing items had been in her custody continuously until brought to the trial, the defense attorney cannot be faulted for not objecting to their admissibility in evidence. Tactics and strategy, under the circumstances, weighed against objections to relevant, pertinent and admissible evidence.

Timmy Stacy, a defense witness, on cross-examination by the state's attorney, mentioned he had been approached about taking a "test" incident to the trial of the defendant. On cross-examination of the defendant, Joe Cannellas, petitioner in this habeas corpus action, he responded to interrogation by the state's attorney that Stacy had told him the state wanted Stacy "to go take a lie detector or something." The majority opinion, on this point, states:

> "... In spite of this prejudicial evidence concerning lie detectors, none of which was elicited deliberately by either side, defense counsel did not move for a mistrial, but chose instead to ask for a limiting instruction from the court. We believe that reasonably skillful trial counsel would have moved for a mistrial."

The opinion cites no rule, decision, precedent or other basis for its position, except their belief. Defense counsel was alert to the situation and invited the trial court's attention to the matter, noting his belief that the situation had never "been brought out in this manner before." After the trial court's comment on the matter and instructions to the jury thereon, defense counsel interposed an objection which would save the issue for consideration on appeal. The majority's opinion that "rea-

sonably skillful trial counsel would have moved for a mistrial" because of the mention of the lie detector test borders on the ridiculous. In the context of the trial proceedings, on defense counsel's request of the trial court, and with the trial court's explanation to the jury, a motion for a mistrial would clearly and plainly be without merit and would be denied. It seems inane to criticize and downgrade defense counsel for his alert, apt and capable handling of the trial situation suddenly developed.

In the opinion the majority states "We find it difficult to discern any tactical reason for bringing out petitioner's marital status, that defendant was a married man with two children, "in light of West Virginia's rule that it is reversible error for the State over defense objection to bring before the jury in a rape prosecution evidence of a defendant's marital status." *State v. Dortan*, 125 W. Va. 381, 24 S.E.2d 455 (1943). The *Dortan* case has no relevance here. In the *Dortan* case the evidence as to the marital status of the defendant was, under the circumstances, irrelevant and inadmissible and, since its admission in the evidence at the instance of the prosecution might be prejudicial to the accused, reversible error resulted. In the present case defense counsel placed the cards on the table face up. He hung the washing out so all could see. Without pursuing the marital status further, he moved methodically to interrogate his client, the accused, as to intercourse with the victim. Defendant admitted the intercourse, entered into "freely and voluntarily on her part." He did not "physically or forcibly require her" to engage in the act. Disclosure of defendant's marital status, in the eyes and minds of the jury, may or may not have added a whit's difference to the weight of the evidence to be considered, but the disclosure was consistent with defense counsel's full and frank presentation of the facts from the standpoint of the accused. His tactical reasoning may have had rational bases not discerned by the majority of the Court in its opinion.

Another basis presented for petitioner's habeas corpus relief is found in the trial court's sentencing order of December 19, 1975, wherein the court "doth sentence the said Joe Cannellas to imprisonment in the Penitentiary of the State of West Virginia for an indeterminate period of not less than TEN (10) YEARS nor more than TWEN-TY (20) YEARS, as required by law." The West Virginia statute at the time the alleged offense was committed, *W. Va. Code*, 61-2-15, provided for a sentence of "not less than ten nor more than twenty years" to be imposed on a jury verdict of guilty with a recommendation of mercy. In *State v. Beacraft*, 126 W. Va. 895, 904, 30 S.E.2d 541 (1944), the Court held that the statute so worded called for a sentence of a definite term which in 1944 was not less than five years nor more than twenty years.* Under the *Beacraft* decision the proper procedure "merits reversal only for the purpose of having the judgment of sentence corrected."

Apart from the issue as to validity of the sentence imposed by the trial court, a matter not discussed or considered in the Court's majority opinion, dispositive action on the petition for a writ of habeas corpus hinges on whether the petitioner as a defendant at his trial had effective assistance of counsel by the attorneys appointed by the trial court to defend him. The majority opinion holds that "there was a substantial probability of actual injury" to defendant at his trial because of the ineffective assistance of counsel and that the writ of habeas corpus should issue, discharging the prisoner from custody. The two attorneys appointed by the trial court as defense counsel are mature lawyers with considerable court experience. In the *Carter* case, *supra*, the court-appointed attorney responsible for the appeal procedures omitted to file the appeal papers. In the *Cannellas* case now before the Court the attorney timely filed his

---

* In *State v. Seckman*, 124 W. Va. 740, 22 S.E.2d 374 (1972), it appears that the defendant, on a rape conviction, was sentenced "to serve a term of five to twenty years in the penitentiary." Apparently no issue on the sentencing was presented to or considered by the Court on judicial review.

petition for a writ of error together with his supporting note of argument. Defense counsel's motion to set the verdict aside in the trial court was based on grounds that the verdict was contrary to the law and the evidence. In his note of argument to this Court in support of his petition for a writ of error only one phase of the trial evidence was stressed. In the *Carter* case the trial court, on defendant's petition for a writ of habeas corpus, granted the writ to return the case to the trial court for resentencing. On appeal this Court affirmed, holding that "injury from ineffective assistance of counsel was entirely speculative or theoretical." Therefore, in the *Carter* case, under *W. Va. Code*, 53-4A-7, resentencing will provide time for petitioning for a writ of error. In the *Cannellas* case the majority opinion does not find the "injury from ineffective assistance of counsel was entirely speculative or theoretical" and grants the writ of habeas corpus without remand of the case to the trial court for resentencing to provide time for petitioning for a writ of error. When the *Cannellas* case was before the Court on defense counsel's petition for writ of error, filed March 19, 1976, the petition was held some six months and denied without comment or reasons. Now on presentation of petitioner's petition for a writ of habeas corpus, the majority opinion reviews the evidence, finds ineffective assistance of court-appointed defense counsel, and issues the writ discharging the prisoner. The court-appointed defense attorneys have in effect been convicted of incompetency and neglect of duty without any semblance of due process of law. The rationale in deciding the *Canellas* case must be found in sources other than the record and the precedent set in the *Carter* case, but the majority opinion explains its position by saying any harm done in the *Carter* case was speculative and theoretical, but not so in the *Canellas* case. My examination of the evidence, the trial court proceedings, and the legal services rendered defendant by the court-appointed attorneys indicate clearly and convincingly that defense counsel provided effective assistance in defending petitioner. Under the circum-

stances they merit a commendation for services rendered, not criticism and conviction on belated charges of incompetency and neglect of duty without according them some opportunity for their own defense consistent with due process of law rights of which the courts are the careful guardians.

Appellate courts are many times far removed from and not greatly familiar with the realities of trial court proceedings, particularly criminal trials involving the more serious felony offenses. Trial lawyers are faced with unexpected and rapidly changing developments and must adjust and respond thereto. The record shows that the court-appointed defense lawyers in this case maintained good professional poise and manifested commendable expertise in handling witness and evidence presentations. To not recognize the dedication and efforts of the court-appointed attorneys under such circumstances—worse, to criticize and castigate them on charges of imcompetence and neglect of duty—is to chill the willingness of competent attorneys to respond to the call to represent and defend needy litigants.

I am authorized to say that Justice Caplan joins in this dissent against the Court's majority decision in this case.