LAWRENCE M. RHODES

*v.*

BOBBY J. LEVERETTE,

*Warden,* WEST VIRGINIA PENITENTIARY

(No. 13962)

Decided November 22, 1977.

*Robert V. Berthold, Jr.*, for relator.

*Chauncey H. Browning*, Attorney General, *John L. MacCorkle*, Assistant Attorney General, for respondent.

MILLER, JUSTICE:

In this habeas corpus proceeding we are asked to grant the writ and discharge the relator from further confinement on the ground that he was denied effective assistance of counsel on appeal.

In 1972, relator was found guilty by a jury of the crime of armed robbery. He had obtained approximately $10,000 at gunpoint by forcing a coal company paymaster and his family from their home to the company office where the money was obtained from a safe.

There is no dispute that after the trial, relator instructed his attorney to take an appeal. Approximately nine and one-half months later, when the appeal had not been taken, relator filed an application for a writ of habeas corpus, which this Court granted on April 30, 1973, returnable to Logan County. That court held a hearing on the writ on May 24, 1973, and the State confessed error as no trial transcript had been prepared.

The circuit court resentenced relator in order to extend the appeal period and reappointed his trial counsel to perfect the appeal. Relator was also given credit on the new sentence for the time previously served on the original sentence. Thereafter, on July 11, 1973, the trial transcript was filed in the circuit clerk's office, but still no appeal was prosecuted.

On June 22, 1977, relator filed in this Court another application for writ of habeas corpus. The writ was issued returnable to this Court on September 13, 1977, at which time the case was fully argued and submitted.

An indigent criminal defendant in this State has a right to appeal his conviction. *West Virginia Constitution*, Article III, Sections 10 and 17; *Linger v. Jennings*, 143 W. Va. 57, 62-63, 99 S.E.2d 740, 744 (1957). He is also constitutionally entitled to a copy of the trial court record, including the transcript of the testimony, at no cost to him. *Griffin v. Illinois*, 351 U.S. 12, 100 L. Ed. 891, 76 S. Ct. 585 (1956). The *Griffin* Court held that under the Due Process and Equal Protection Clauses of the Federal Constitution, a state cannot require an indigent defendant to pay for a transcript of trial proceedings. This Court, in *State ex rel. Johnson v. McKenzie*, ____ W. Va. ____, 226 S.E.2d 721 (1976), extended this concept, holding that the denial of a trial court record to a non-indigent defendant who desires an appeal violates due process.

A companion right, springing from the fact that an appeal is rather meaningless unless the indigent defendant has access to counsel, is that an indigent must be furnished court-appointed counsel to assist him on appeal. In the initial development of this doctrine, the United States Supreme Court considered the Due Process and Equal Protection Clauses to be the constitutional bases for such right. *Douglas v. California*, 372 U.S. 353, 9 L. Ed. 2d 811, 83 S. Ct. 814, (1963); *Lane v. Brown*, 372 U.S. 477, 9 L. Ed. 2d 892, 83 S. Ct. 768 (1963). In *Anders v. California*, 386 U.S. 738, 18 L. Ed. 2d 493, 87 S. Ct. 1396 (1967), the Supreme Court appears to have rec-

ognized the Sixth Amendment right to counsel as a further constitutional foundation. *Ross v. Moffitt,* 417 U.S. 600, 41 L. Ed. 2d 341, 94 S. Ct. 2437 (1974), indicates that the primary constitutional ground for the right of an indigent defendant to counsel on appeal is the Equal Protection Clause of the Fourteenth Amendment to the Federal Constitution.

Inherent in the concept of the right to counsel is that counsel be effective, and within this concept is the requirement that appointed counsel support his client's appeal to the best of his ability.[1] *Anders v. California, supra.*

This Court recognized in *State ex rel. Bradley v. Johnson,* 152 W. Va. 655, 166 S.E.2d 137 (1969), that an indigent defendant is entitled to effective assistance of counsel on appeal. The right to appointed counsel in the case of indigency comes within the equal protection guarantee of Article III, Section 17 of the *West Virginia Constitution.* In *State ex rel. Bratcher v. Cooke,* 155 W. Va. 850,

---

[1] There is nothing in the record before us that indicates why relator's court-appointed counsel did not pursue the appeal. *Anders,* however, makes it clear that it is not the role of counsel to determine whether the appeal is frivolous. That case holds that the decision to allow counsel to withdraw is the appellate court's. *Anders* sets out the following rule which counsel is required to follow since it is constitutionally mandated under the Sixth Amendment of the United States Constitution and made mandatory on the states through the Fourteenth Amendment:

"Of course, if counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal. A copy of counsel's brief should be furnished the indigent and time allowed him to raise any points that he chooses; the court—not counsel—then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous. If it so finds it may grant counsel's request to withdraw and dismiss the appeal insofar as federal requirements are concerned, or proceed to a decision on the merits, if state law so requires. On the other hand, if it finds any of the legal points arguable on their merits (and therefore not frivolous) it must, prior to decision, afford the indigent the assistance of counsel to argue the appeal." [386 U.S. at 744, 18 L. Ed. 2d at 498, 87 S. Ct. at 1400.]

852, 188 S.E.2d 769, 770 (1972), a criminal defendant's counsel failed to file a timely appeal after being requested to do so by the defendant, and this Court concluded:

> "... a convicted defendant can not be denied his right to appeal, either by the trial judge or by one outside the judicial system. Such denial constitutes a violation of the due process clauses of the state and federal constitutions and the judgment imposing sentence is void and unenforceable."

From the foregoing principles, it is clear that this Court is committed to the concept that effective assistance of counsel on appeal is guaranteed through the Due Process Clause of the *West Virginia Constitution*, Article III, Section 10.

It is not disputed that relator has been twice denied his right to appeal. In the first instance the denial occured because the State failed to furnish a trial transcript before the appeal period expired. The present violation centers on the failure of court-appointed counsel to perfect an appeal within the appeal period allowed following resentencing.

The issue that now must be addressed is the form of relief which should be awarded. We are considering the writ of habeas corpus *ad subjiciendum*. When issued, this writ commands one who detains another to bring such person before the court. Where the term "habeas corpus" is used alone, it is understood to mean the writ of habeas corpus *ad subjiciendum*. *Click v. Click*, 98 W. Va. 419, 127 S.E. 194 (1925).

Much has been written about the origins of this writ and for those interested in its evolution, reference is made to *Click v. Click, supra; Fay v. Noia*, 372 U.S. 391, 9 L. Ed. 2d 837, 83 S. Ct. 822 (1963); and *Preiser v. Rodriguez*, 411 U.S. 475, 36 L. Ed. 2d 439, 93 S. Ct. 1827 (1973)[2]

---

[2] For various comment on history of federal habeas corpus, compare: Hart, *Foreword: The Time Chart of the Justices*, 73 Harv. L. Rev. 84 (1959); Reitz, *Federal Habeas Corpus: Impact of an Abortive*

In addition to its common law roots, the writ of habeas corpus acquired constitutional dimensions in the sense that its privilege cannot be suspended by the Federal government except in certain extreme cases. *United States Constitution,* Article I, § 9, cl. 2.[3] In this State the privilege of the writ is even more absolute as "the privilege of the writ of habeas corpus shall not be suspended." *West Virginia Constitution,* Article III, Section 4. Finally, under Chapter 53, Article 4A, Section 1 *et seq.* of the *West Virginia Code* of 1931, as amended, certain procedural modifications have been made in regard to the courts' jurisdiction of the writ.[4]

The United States Supreme Court has made it clear that the writ of habeas corpus, because of its broad availability to challenge confinement contrary to the Constitution, cannot be limited to a particular form of remedial relief. *Prieser v. Rodriguez, supra;*[5] *Peyton v. Rowe,* 391 U.S. 54, 20 L. Ed. 2d 426, 88 S. Ct. 1549 (1968); *Irvin v. Dowd,* 366 U.S. 717, 6 L. Ed. 2d 751, 81 S. Ct. 1639 (1961).

We begin with the proposition that an unconditional discharge from confinement upon the issuance of a writ

---

*State Proceeding,* 74 Harv. L. Rev. 1315 (1961); Brennan, *Federal Habeas Corpus and State Prisoners: An Exercise in Federalism,* 7 Utah L. Rev. 423 (1961); Bator, *Finality in Criminal Law and Federal Habeas Corpus for State Prisoners,* 76 Harv. L. Rev. 441, 468 (1963); Oaks, *Legal History in the High Court—Habeas Corpus,* 64 Mich L. Rev. 451 (1966); Friendly, *Is Innocence Irrelevant? Collateral Attack on Criminal Judgments,* 38 U. Chi. L. Rev. 142, 170-171 (1970); and Developments in the Law—Federal Habeas Corpus, 83 Harv. L. Rev. 1038 (1970).

[3] "The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it."

[4] As the subsequent portion of this opinion demonstrates, the statute has not expanded the type of relief afforded by the writ at common law.

[5] As *Preiser v. Rodriguez* points out, there are a number of situations where the writ of habeas corpus can be utilized where release from custody is not sought, as it is available to attack future confinement or the manner in which current custody is administered. Here, we are concerned only with the type relief where the writ of habeas corpus seeks present relief from custody.

of habeas corpus does not ordinarily operate to bar further prosecution under principles of double jeopardy. *United States v. Tateo,* 377 U.S. 463, 12 L. Ed. 2d 448, 84 S. Ct. 1587 (1964);[6] *State ex rel. Bradley v. Johnson, supra; State ex rel. Tune v. Thompson,* 151 W. Va. 282, 151 S.E.2d 732 (1966).

The federal rule is that relief will be accorded as the ends of justice may require.[7] Generally the United States Supreme Court has looked to the nature of the fundamental or constitutional error in order to determine what relief will be granted to correct it. In *Ex Parte Lange,* 85 U.S. (18 Wall.) 163, 21 L. Ed. 872 (1873), the court found that petitioner was held in violation of the Double Jeopardy Clause and discharged him from confinement. The petitioner in *In Re Bonner,* 151 U.S. 242, 38 L. Ed. 149 (1894), was sentenced unlawfully to a state prison. He was discharged from confinement subject to the right of the government to resentence him to a federal prison. In *Mahler v. Eby,* 264 U.S. 32, 68 L. Ed. 549, 44 S. Ct. 283 (1924), the Court found that a deportation warrant was void but provided that the petitioner should not be discharged until the Secretary of Labor had a reasonable opportunity to prepare a new warrant.

---

[6] *Tateo, supra,* does suggest that where the prosecution or judiciary deliberately seeks a mistrial because of fear that the jury would likely acquit the defendant, different considerations as to the applicability of double jeopardy would obtain. (Note 3, 377 U.S. at 468, 12 L. Ed. 2d at 452, 84 S.Ct. at 1590.) This footnote was later confirmed in Note 12 of *United States v. Jorn,* 400 U.S. 470, 484, 27 L. Ed. 2d 543, 556, 91 S. Ct. 547, 557 (1971).

[7] While the United States Supreme Court has cited the language of the federal habeas corpus statute to support its disposing of the matter "as law and justice require", 28 U.S.C. § 2243, it is clear that under its interpretation of the common law scope of the writ of habeas corpus its power to grant relief would be the same regardless of the statutory language. *Fay v. Noia,* 372 U.S. at 399-414, 438, 9 L. Ed. 2d at 845-854, 869, 83 S.Ct. at 827-835, 848. Moreover, 28 U.S.C. §2255, which may be invoked by federal prisoners who challenge restraints contrary to the Constitution or laws of the United States, is intended to be as broad as the common law writ of habeas corpus. *United States v. Hayman,* 342 U.S. 205, 214-219, 96 L. Ed. 232, 239-242, 72 S. Ct. 263, 269-272 (1952).

In *Dowd v. United States ex rel. Cook,* 340 U.S. 206, 95 L. Ed. 215, 71 S. Ct. 262 (1951), and *Lane v. Brown,* 372 U.S. 477, 9 L. Ed. 2d 892, 83 S. Ct. 768 (1963), the Court found that the State had denied the petitioner's right to an appeal and ordered him discharged unless the state, within a reasonable time, afforded him an appeal.

In *Rogers v. Richmond,* 365 U.S. 534, 5 L. Ed. 2d 760, 81 S. Ct. 735 (1961), and *Boles v. Stevenson,* 379 U.S. 43, 13 L. Ed. 2d 109, 85 S. Ct. 174 (1964), the Court found the confessions involuntary but ordered that the states be allowed an opportunity to retry the petitioners within a reasonable time; otherwise, they were to be discharged. On the other hand, in *Jackson v. Denno,* 378 U.S. 368, 12 L. Ed. 2d 908, 84 S. Ct. 1774 (1964), the Court concluded that an improper standard was applied in determining whether a confession was voluntary, and remanded the case to give the state court an opportunity either to hold a voluntariness hearing or a new trial; otherwise, the petitioner would be discharged.

In *Pate v. Robinson,* 383 U.S. 375, 15 L. Ed. 2d 815, 86 S. Ct. 836 (1966), the Court determined there was a denial of due process in the state's failure to conduct a mental competency hearing. Its order directed that the writ of habeas corpus issue discharging relator, unless the State granted a new trial within a reasonable time.

In *Whiteley v. Warden of Wyoming Penitentiary,* 401 U.S. 560, 28 L. Ed. 2d 306, 91 S. Ct. 1031 (1971), it was found that illegally seized evidence was introduced at petitioner's trial. The case was remanded with directions that the writ issue, unless the state made appropriate arrangements to retry the petitioner.

The same type of tailored relief is granted in the Federal Courts of Appeals.[8]

[8] *Thomas v. Wyrick,* 535 F.2d 407 (8th Cir. 1976), ineffective assistance of counsel requires issuance of writ subject to the right of the state within 90 days to retry petitioner. *United States ex rel. Cleveland v. Warden,* 544 F.2d 1200 (3rd Cir. 1976), failure to provide free transcript for appeal; remanded to permit state to provide transcript. *United States ex rel. Wilson v. Warden Cannon,* 538 F.2d 1272

In this State, as pointed out in *State ex rel. Johnson v. McKenzie*, ___ W. Va. ___, 226 S.E.2d 721 (1976), some confusion existed in our prior decisions as to the appropriate relief to be awarded on the granting of a writ of habeas corpus. It appears that the confusion occurred from the failure to understand two salient principles in regard to habeas corpus relief. The first is that even on an unconditional discharge, the State is ordinarily not precluded from retrying the relator; the second is that relief will be given so as to cure the underlying constitutional error.

In those cases where the constitutional error substantially affects the underlying trial, the relief is a discharge of the relator. *State ex rel. Browning v. Boles*, 147 W. Va. 878, 132 S.E.2d 505 (1963) (criminal court lacked jurisdiction to sentence juvenile); *State ex rel. May v. Boles*, 149 W. Va. 155, 139 S.E.2d 177 (1964); *State ex rel. Stumbo v. Boles*, 149 W. Va. 174, 139 S.E.2d 259 (1964); *State ex rel. Browning v. Boles*, 149 W. Va. 181, 139 S.E.2d 263 (1964) (failure to provide counsel at trial). In each instance the fact that the court did not upon dis-

---

(7th Cir. 1976), remand to the district court to fix a reasonable time for the state to retry on a murder charge where the evidence was clear that conviction rested on perjured testimony offered by the state. *Davis v. Henderson*, 473 F.2d 679 (5th Cir. 1973), improper guilty plea vacated and remanded to state court for taking of a new plea. In *United States ex rel. Doggett v. Yeager*, 472 F.2d 229 (3rd Cir. 1973), prejudicial publicity violated due process standards. The court ordered issuance of writ unless the state within a reasonable time to be fixed by order afforded petitioner a new trial. *Macon v. Lash*, 458 F.2d 942 (7th Cir. 1972), failure of court-appointed counsel to perfect appeal required order discharging relator from custody, unless within a reasonable time the state provided an appeal. *United States ex rel. Caruth v. LaValle*, 464 F.2d 449 (2nd Cir. 1972), failure to provide appeal by state warranted order requiring state to proceed with all possible speed to accord petitioner appeal. *Turner v. State of North Carolina*, 412 F.2d 486 (4th Cir. 1969), appropriate relief for denial of appellate review where no transcript exists is to vacate sentence with the right of the state to provide a new trial within a reasonable time. *Worts v. Dutton*, 395 F.2d 341 (5th Cir. 1968), absence of court-appointed counsel at sentencing violated Sixth Amendment. Sentence vacated with right of the state to resentence with counsel present.

charge of the prisoner add language to the effect that the discharge was subject to the right of the State to retry is of no consequence. This right is implicit because double jeopardy principles are inapplicable.

*Johnson, supra,* dealt extensively with the situation where the discharge is not immediate, but rather conditioned on the right of the state to correct the fundamental or constitutional error. This type of relief is particularly suited to those cases where there has been a denial of an appeal.

*Johnson, supra,* announced a rule that requires those circuit courts confronted with a writ of habeas corpus on the failure to provide a transcript or record for appeal to order that a transcript be provided within thirty days from the issuance of the writ. If the record is not provided within that period, the prisoner is entitled to be discharged from confinement. Consistent with its rule, *Johnson* ordered that the prisoner be "... discharged but such discharge is delayed for a period of thirty days in order to provide the State with an opportunity to deliver the transcript ..." 226 S.E.2d at 727.

It is apparent under *Johnson* that if the State did not furnish a transcript within the thirty-day period, the prisoner would be freed from confinement. However, the State still could have tried him on the original criminal offense since a retrial would not offend double jeopardy principles. Johnson was concerned only with the problem of the denial of a timely appeal by reason of the lack of a transcript. By placing a limit on the time in which the State is required to act to correct the deficiencies that prevent a criminal defendant from taking an appeal, *Johnson* gives the State two alternatives. The first is to act within the prescribed time period by furnishing a transcript so that the appeal will not be further delayed. Secondly, if the time period is not complied with, the relator will have the effect of a successful appeal, in that he will be discharged from custody but the State will have the right to retry him.

*Carter v. Bordenkircher*, ____ W. Va. ____, 226 S.E.2d 711 (1976), added another dimension to the relief that could be made available in a habeas corpus proceeding where there has been a denial of the right to appeal. *Carter* involved an appeal from the partial denial of a writ of habeas corpus where the issue was whether the denial of effective assistance of counsel which prevented a timely appeal would warrant an unconditional discharge.

The decision of the circuit court to allow resentencing was affirmed. The Court, in Syllabus Point 2, stated this general rule:

> "In determining appropriate relief in habeas corpus for ineffective assistance of counsel in not prosecuting a timely appeal, the court should consider whether there is a probability of actual injury as a result of such denial, or alternatively whether the injury is entirely speculative or theoretical, and where the denial of a timely appeal was probably harmless, except in the case of extraordinary dereliction on the part of the State the appropriate remedy is not discharge but such remedial steps as will permit the effective prosecution of an appeal."

The test formulated by *Carter* must be read in the context of its facts. The crucial issue was the failure to have counsel for the appeal. A record of the trial proceedings was available to this Court, and on the surface it did not appear to contain reversible prejudicial error. This weighed against a showing of actual prejudice to the relator by the delay in obtaining the appeal.[9] Although this Court correctly found that the lack of prejudice could not preclude him from exercising his constitu-

---

[9] In those instances where the court has before it the trial court record and the application for the writ of habeas corpus centers on the failure to have counsel perfect appeal, the court, if it finds constitutional errors on the face of the record, is warranted in finding that the prejudice to the prisoner is so plain that it should issue the writ discharging the prisoner, subject of course to the right of the state to retry. *See, e.g., Bowers v. Coiner*, 309 F. Supp. 1064 (S.D. W.Va. 1970).

tional right to an appeal, it would have an effect on the relief granted. Similarly, the lack of any extraordinary dereliction on the part of the State in denying appeal was a second factor which precluded unconditional discharge.

*Carter's* rule of extraordinary dereliction was applied in *Johnson v. McKenzie,* ___ W. Va. ___, 235 S.E.2d 138 (1977),[10] to require an unconditional discharge of the relator. It is to be stressed that *Johnson* (1977), also involved a habeas corpus proceeding where the constitutional errors related to the failure to obtain an appeal. The rationale of *Johnson* (1977), was that the relator's constitutional right to appeal was so inordinately frustrated by the State's inaction that it would be meaningless to require further steps to be taken to allow an appeal. In lieu thereof, he was discharged unconditionally, which was the highest relief he could have obtained had he been successful on appeal.[11]

Carter did not elaborate on what may constitute extraordinary dereliction sufficient to warrant unconditional release in a habeas corpus proceeding. This will largely depend on the facts of the individual case. Factors which are relevant include the following: the clarity and diligence with which the relator has moved to assert his right of appeal; the length of time that has been served on the underlying sentence measured against the time remaining to be served; whether prior writs have been filed or granted involving the right of appeal; and the related question of whether resentencing has occurred in order to extend the appeal period. While ex-

---

[10] Herein called *Johnson* (1977), so as not to confuse it with the earlier case of *Johnson v. McKenzie.*

[11] Johnson would still be subject to retrial since retrial would not infringe upon the constitutional protection against double jeopardy. On a retrial and in the event of a subsequent conviction, the defendant would be entitled to the time spent incarcerated under his prior conviction from which he was discharged by the writ of habeas corpus. *See, Patton v. State of North Carolina,* 381 F.2d 636 (4th Cir. 1967), *cert. denied,* 390 U.S. 905, 19 L. Ed. 2d 871, 88 S. Ct. 818.

traordinary dereliction on the part of the State does not require a showing of malice or ill will toward the relator, certainly if such is shown it would be a significant factor.

Finally, as in all attempts to categorize such a complex subject as the nature of the relief to be awarded on a writ of habeas corpus, we recognize that there may exist such extreme abuses on the part of the State as against the constitutional rights of an individual that the only appropriate remedy would be an unconditional discharge coupled with an injunction against further prosecution of the underlying criminal action.[12]

Turning from these general principles to the facts of the case at hand, we find that the relief sought in this writ of habeas corpus relates solely to the relator's inability to perfect a timely appeal. The State does not dispute that his constitutional rights in this regard have been infringed.

It is the State's position that there are not sufficient facts to warrant the application of the extraordinary dereliction rule announced in *Carter*. We are constrained to agree, although the relator's position is not without some merit. He has already served five years on his 25-year sentence. In May of 1973, he was resentenced and counsel was reappointed to perfect an appeal. The trial transcript was made available to counsel on July 11, 1973. At this point, the State had moved with requisite diligence to correct the constitutional error in connection with the appeal.

So far as the record indicates, the sole reason for the denial of relator's right to appeal was counsel's failure

---

[12] It is settled law the equitable principles are applicable in habeas corpus proceedings. *Fay v. Noia, supra,* 372 U.S. at 438, 9 L. Ed. 2d at 869, 83 S.Ct. at 848; *United States v. Malcolm,* 432 F.2d 809, 814 (2nd Cir. 1970). Illustrative of such extreme situation is *United States ex rel. Schuster v. Vincent,* 524 F.2d 153 (2nd Cir. 1975), where the relator had been unconstitutionally confined in a mental hospital for 27 years and the state had deliberately delayed holding a hearing on the illegality of the detention for a period of three years after it had been ordered to do so.

to perfect the appeal. The only step taken by counsel was to file the notice of intent to appeal on the 24th day of May, 1973.

However, relator does not contend that he has corresponded with his counsel as to what action was being taken on his appeal or that he has informed the Circuit Court of Logan County that no appeal was filed by counsel. After his initial conviction, relator sent a letter to the Circuit Court dated August 7, 1972. This letter reveals that relator possesses more than a cursory knowledge of his legal rights:

> "As I am indigent I move the Court to appoint counsel to prosecute the appeal in my behalf. I further move the Court to order the Clerk of the Circuit Court of Logan County, Logan, West Virginia, to furnish appointed counsel a free copy of the transcript of my trial and all records pertinent thereto, for the purpose of perfecting my appeal.

> "As this notice is filed within the sixty (60) day time limit as required by statute law, § 58-5-4, West Virginia Code, the Court is obligated to abide by § 51-7-7, West Virginia and furnish the required transcript."

We cannot condone the actions of relator's court-appointed counsel in failing to perfect the appeal. On the other hand, we must recognize that relator, who is knowledgeable of his rights, took no positive action to notify any court that his counsel was not pursuing his appeal until he filed the present writ of habeas corpus before this Court on June 22, 1977, some four years after counsel was appointed to take the appeal.

Although the State is constitutionally obliged to appoint effective counsel to assist an indigent criminal in his appeal, once this has been done there rests some responsibility on the indigent criminal to make known to the court counsel's inaction. This case is different from *Johnson* (1977), where the appeal rights were frustrated by the long delay in the State's filing of a trial tran-

script. There, State involvement and dereliction were much more direct and pronounced.

It should be emphasized that the constitutional right to appeal cannot be destroyed by counsel's inaction or by a criminal defendant's delay in bringing such to the attention of the court, but such delay on the part of the defendant may affect the relief granted.

It is therefore the judgement of this Court that the relator is entitled to relief as follows: The relator is entitled to be discharged from custody, but such discharge is stayed for a period of thirty days in order to give the State an opportunity to resentence relator with credit for time previously served and to appoint new counsel to perfect the appeal.

*Writ as moulded awarded.*