705 S.E.2d 544

STATE of West Virginia, Plaintiff
Below, Appellee,

v.

Meredith Lee VANHOOSE, Defendant
Below, Appellant.

and

State of West Virginia Ex Rel. Meredith
Lee VanHoose, Appellant,

v.

Evelyn Seifert, Warden, Northern
Correctional Facility,
Appellee.

Nos. 35483, 35478.

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 21, 2010.

Decided Oct. 14, 2010.

Ronald G. Salmons, Paul David Knipp, West Hamlin, WV, for Appellant.

Darrell V. McGraw, Jr., Attorney General, Thomas W. Smith, Managing Deputy Attorney General, Charleston, WV, for Appellees.

PER CURIAM:

This case involves two consolidated appeals brought by Meredith Lee VanHoose (hereinafter "Mr. VanHoose"). The first appeal derives from a September 8, 2000, order of the Circuit Court of Cabell County sentencing Mr. VanHoose to life imprisonment with mercy and to a consecutive sentence of forty years imprisonment[1] following his conditional plea of guilty to one count of first-degree murder and one count of second-degree murder.[2] The second appeal is from an order of the Circuit Court of Cabell County denying Mr. VanHoose's request for habeas corpus relief, which request was based upon an alleged failure of his initial appellate counsel to file an appeal of his conviction. The errors assigned by Mr. VanHoose in these appeals are: (1) he was denied a speedy trial under the one-term rule of W. Va.Code § 62–3–1 (1981) (Repl.Vol.2005); (2) he was denied a speedy trial under the three-term rule of W. Va.Code § 62–3–21 (1959) (Repl.Vol.2005); and (3) he received ineffective assistance of counsel because of his initial appellate counsel's failure to file an appeal of his conviction. After a careful review of the briefs, listening to the arguments of the parties, and consideration of the record submitted on appeal, we affirm the circuit court's sentencing order and its order denying habeas corpus relief.

## I.

### FACTUAL HISTORY

On March 25, 1998, Mr. VanHoose made a 911 emergency phone call from his apartment in Huntington, West Virginia.[3] During that phone call, Mr. VanHoose stated that his wife, Michelle VanHoose, shot and killed two intruders. Officers from the Huntington police department responded to the 911 call. When the officers arrived at Mr. VanHoose's apartment, they found the dead bodies of Eric Glen Smith[4] and James Nichols Flowers.[5] Both men had been shot with a high powered rifle.

The medical examiner determined that Mr. Smith was shot in the temple at close range, causing his brain to protrude from his skull. Mr. Flowers was shot in the left arm and head. Further, it was determined that after Mr. Flowers was initially shot in the left arm, he apparently fell to the floor and raised his right hand to shield the back of his head. As his right hand was raised, a bullet passed through his hand and tore off the back of his head.

After the police arrived and took control of the crime scene, they transported the VanHooses to police headquarters to be interviewed. During the interview, Mr. VanHoose informed the police that he and his wife were at home when they heard a knock at the door. Mr. VanHoose stated that he told his wife to tell whomever was at the door that he was not home. Mr. VanHoose then went to the bedroom. While in the bedroom, Mr. VanHoose stated that he heard noises and came out of the bedroom, where he saw his wife being attacked by Mr. Flowers and Mr. Smith. Mr. VanHoose further stated that he began fighting with the two men, and that, during this struggle, his wife retrieved a rifle and shot both men.[6]

On March 26, 1998, the day after the police interviewed the VanHooses, Mr. VanHoose contacted the police by phone and stated that he wanted to change his story about the shooting. Mr. VanHoose was told that he would be contacted by the detective investi-

---

1. The sentence for forty years was suspended. Mr. VanHoose was placed on five years probation.

2. Mr. VanHoose was resentenced on or about April 9, 2009, for purposes of bringing the direct appeal of his conviction.

3. Because Mr. VanHoose entered a guilty plea, the factual record is based upon evidence the State presumptively would have introduced at a trial.

4. Mr. Smith was twenty years old.

5. Mr. Flowers was eighteen years old.

6. Mrs. VanHoose told the police that, after she answered the knock at the door, Mr. Flowers and Mr. Smith asked to speak with Mr. VanHoose. After telling the men her husband was not at home, Mrs. VanHoose stated that both men threatened to harm her and her child if she did not have sex with them. Thereafter, a struggle ensued and Mr. VanHoose came out of the bedroom. Mrs. VanHoose stated that while the two men were fighting Mr. VanHoose, she shot them.

gating the matter. The detective, A. Meek, returned Mr. VanHoose's phone call. Mr. VanHoose told detective Meek that he was the one who actually shot the two men, not his wife. In this version of his story, Mr. VanHoose again stated that he was in the bedroom when he heard noise. Mr. Van-Hoose stated that he came out of the bedroom with his rifle and that, after seeing his wife being attacked by the two men, he shot and killed them. Mr. VanHoose told the detective that he lied the first time he was interviewed because he was scared and that, because his wife was a juvenile, he knew she would not be arrested. Mr. VanHoose agreed to come to police headquarters later that day to give a more detailed statement. However, when Mr. VanHoose arrived at police headquarters, he stated that he did not wish to give a statement without first obtaining a lawyer. At that time, the police did not arrest Mr. VanHoose.

During further investigation of the shootings, the police interviewed Virginia Mae Brown, who lived in the same apartment complex as Mr. VanHoose. Ms. Brown stated that, on the day of the shooting, she was outside her apartment talking and listening to music, and she saw Mr. VanHoose and his wife come home and go into their apartment. About fifteen minutes after Mr. VanHoose and his wife entered their apartment, Ms. Brown stated that she observed two men get out of a pick-up truck and go to the door of the VanHooses. According to Ms. Brown, the men knocked on the door; Mr. VanHoose answered the door; and he let the two men inside the apartment. Ms. Brown further declared that about ten to fifteen minutes after the men entered the apartment, she heard four gunshots. A few minutes after she heard the gunshots, Ms. Brown said that she saw Mrs. VanHoose open the door and look outside.[7]

The police also took a statement from Lorengo Barrozo, who lived in an apartment adjacent to the VanHooses. Mr. Barrozo stated that, on the day of the killings, he was in his apartment when he heard four or five loud noises that sounded like cherry bombs. According to Mr. Barrozo, he heard a baby crying in the VanHooses' apartment,[8] so he put his ear to the adjoining wall. While listening for further sounds coming from the VanHooses' apartment, Mr. Barrozo stated that he heard a female voice say "Why, why, why did you do this for?" Mr. Barrozo also related that he heard additional conversation but could not understand what was being said.

Additionally, the police took a statement from Stacy Cox, who also lived in the same apartment complex as the VanHooses. Ms. Cox stated that she heard what sounded like gunshots coming from the VanHooses' apartment. After hearing the gunshots, Ms. Cox stated that she heard a male voice in the VanHooses' apartment say, "What did he do to you?" She then heard a female voice respond, "Nothing."

Furthermore, the police interviewed John E. Dunfee, a friend of the murder victims. Mr. Dunfee informed the police that he and the two victims had met Mr. VanHoose while attending a vocational technical school. Mr. Dunfee also stated that he and Mr. Flowers had previously visited Mr. VanHoose's apartment to drink beer and smoke marijuana.[9]

Finally, the police interviewed Amy Miller, Mr. Flowers' girlfriend, who told the police that the VanHooses had been to her home on several occasions. Ms. Miller stated that earlier in March 1998, she and Mr. Flowers had accompanied the VanHooses to Kentucky. Finally, Ms. Miller said that she and Mr. Flowers had visited the VanHooses on the day before Mr. Flowers was killed.

On or about March 30, 1998, the police arrested Mr. VanHoose on charges of murdering Mr. Flowers and Mr. Smith.[10] On

---

7. Ms. Brown also stated that she previously had seen the two men come to the VanHooses' apartment on a steady basis.

8. The VanHooses had an infant child.

9. The police interviewed several witnesses who stated that Mr. VanHoose sold marijuana. One of the witnesses admitted to selling marijuana for Mr. VanHoose.

10. The police obtained test results which showed gunshot residue was on both Mr. VanHoose and his wife.

September 18, 1998, a grand jury returned a two-count indictment charging Mr. VanHoose with the first-degree murder of Mr. Flowers and Mr. Smith.

## II.

### CONVICTION PROCEDURAL HISTORY

After Mr. VanHoose was indicted, a trial date was set for December 7, 1998, but was continued to January 6, 1999.[11] On the date set for trial, January 6, 1999, Mr. VanHoose moved the court to continue the trial. The court granted the motion and set the case for trial on May 11, 1999.[12]

On or about May 4, 1999, Mr. VanHoose filed a motion to preclude his wife from testifying against him. In that motion, Mr. VanHoose asserted his right to preclude his wife from testifying against him under the marital testimonial privilege statutes. On May 7, 1999, the State filed a motion to continue the trial because Mr. VanHoose refused to waive the marital privilege so that his wife could testify. In that motion, the State informed the court that Mrs. VanHoose had filed for a divorce in Kentucky in April 1999.[13] The trial court granted the State's motion to continue and set a new trial date for August 24, 1999.[14]

On September 27, 1999, Mr. VanHoose filed a motion for a speedy trial under the one-term rule of W. Va.Code § 62–3–1 (1981) (Repl.Vol.2005).[15] It appears that a hearing was held on the motion on October 5, 1999. The trial court entered an order denying the motion. Also, in the order denying the motion, the trial court stated that, because it appeared that the divorce would not be finalized by the time set for trial, the trial was continued until January 25, 2000.

On November 4, 1999, Mr. VanHoose filed a renewed motion for a speedy trial under W. Va.Code § 62–3–1. By order entered December 30, 1999, the trial court denied the motion after finding that the speedy trial right was now governed by the three-term rule under W. Va.Code § 62–3–21 (1959) (Repl.Vol.2005).[16]

On or about January 24, 2000, Mr. VanHoose filed a motion to dismiss the indictment on the grounds that he was not tried within the one-term rule under W. Va.Code § 62–3–1 or within the three-term rule under W. Va.Code § 62–3–21. The motion was heard on January 25, 2000, at which time the trial court denied the motion to dismiss. Further, at that same hearing, the trial court set a new trial date for April 27, 2000.

On April 20, 2000, a status conference was held. At the proceeding the State informed the court that Mrs. VanHoose had been granted a divorce on April 7, 2000. However, Mr. VanHoose informed the court that he was going to appeal the divorce; therefore, it was not final. Further, Mr. VanHoose informed the court that, because the divorce was still not final, the State could not call Mrs. VanHoose as a witness against him. As a result of Mrs. VanHoose being unavailable to testify, the trial court continued the trial until August 29, 2000.

In August 2000, Mr. VanHoose filed a motion to dismiss the indictment and a motion for trial before the September term of court.

---

**11.** The initial trial date was continued because Mr. VanHoose's initial two attorneys were permitted to withdraw from the case by order of the court on November 19, 1998. New counsel was appointed on the same day. Further, at some point during the proceedings, Mr. VanHoose's family retained private counsel to represent him. The trial court entered an order indicating that the retained law firm could not represent Mr. VanHoose in court proceedings so long as he relied upon court appointed counsel. It appears that, in April 1999, the trial court appointed one of the attorneys from the private firm to act as co-counsel.

**12.** However, on its own motion, the court reset the trial for May 18, 1999.

**13.** The VanHooses were married in Kentucky in 1996.

**14.** However, on August 4, 1999, the trial court, on its own motion, reset the trial for November 16, 1999. In the order continuing the trial until November, the trial court stated that the continuance was based upon the fact that the divorce between the VanHooses had not been finalized.

**15.** This statute is set out in Section I.A., *infra*.

**16.** Section I.A., discusses this statute.

A hearing was held on the motions on August 29, 2000. At that hearing, the trial court denied the motions. The trial court set a trial date for September 8, 2000. The trial court stated in its order that, after further research, it determined that the appeal filed by Mr. VanHoose in the divorce case did not affect the finality of the divorce. Therefore, Mrs. VanHoose was now available to testify against Mr. VanHoose.

On September 1, 2000, Mr. VanHoose filed for a writ of prohibition with this Court seeking to have the case dismissed on the grounds of a violation of the one-term rule of W. Va.Code § 62–3–1 and the three-term rule of W. Va.Code § 62–3–21. This Court denied the petition on September 7, 2000.

On September 7, 2000, the day before the case was set for trial, Mr. VanHoose entered a conditional plea of guilty to first-degree murder and second-degree murder. The condition for the plea was that Mr. VanHoose would be permitted to appeal the issue of the State's failure to try him during the terms of court set out under W. Va.Code § 62–3–1 and W. Va.Code § 62–3–21.

Thereafter, on September 8, 2000, the trial court sentenced Mr. VanHoose to life imprisonment with mercy on the first-degree murder conviction, and a suspended consecutive sentence of forty years imprisonment for the second-degree murder conviction. Also on that same day, the trial court appointed George Beter as counsel to represent Mr. VanHoose in an appeal.[17]

### III.

### POST–CONVICTION PROCEDURAL HISTORY

On March 2, 2001, Mr. VanHoose's appellate counsel, Mr. Beter, moved the trial court for an extension of time to file an appeal because necessary transcripts had not been produced. The trial court granted an extension until May 2, 2001, to file an appeal. On May 2, 2001, Mr. Beter again moved the trial court for an extension of time to file an appeal. The court granted the motion and extended the appeal period to July 1, 2001. On June 29, 2001, Mr. Beter once again moved the trial court for an extension of time to file an appeal. The court granted the motion and extended the appeal deadline to August 20, 2001. On August 21, 2001, Mr. Beter again moved the trial court for an extension of time to file an appeal. The court granted the motion and extended the appeal timeline to October 31, 2001.

On September 19, 2001, Mr. Beter filed a motion to withdraw as counsel, because of irreconcilable differences as to appeal strategy. The trial court entered an order asking Mr. VanHoose to respond to the request of counsel to withdraw. Mr. VanHoose responded by letter dated October 12, 2001, indicating that he agreed with counsel that irreconcilable differences existed and that he wanted new counsel appointed. By order entered November 14, 2001, the trial court allowed Mr. Beter to withdraw and appointed Steve Jarrell as new appellate counsel.[18]

On March 21, 2002, Mr. VanHoose filed a motion for appointment of counsel in a habeas corpus petition that allegedly was filed with the court.[19] The circuit court entered an order on March 21, 2002, appointing Courtney Craig to represent Mr. VanHoose in the habeas proceeding. However, the record indicates that Mr. Craig did not receive the order of appointment.[20]

On July 10, 2002, Mr. VanHoose filed a petition for a writ of habeas corpus with the circuit court. The petition alleged that he was not prosecuted within the term of court provided under W. Va.Code § 62–3–1 and W. Va.Code § 62–3–21, and that he was denied a

17. Mr. Beter was also one of the trial counsel appointed to represent Mr. VanHoose.

18. There is nothing in the record to show that Mr. Jarrell received the order of appointment or made an appearance in the case. However, during the habeas proceeding, there was some indication that Mr. Jarrell briefly appeared in the case.

19. In a letter to the court, Mr. VanHoose stated that he had filed a petition for writ of habeas corpus with the court on February 11, 2002. However, the record does not contain a petition with that date.

20. As will be further explained, *infra.* Mr. Craig eventually did appear in the case.

right of appeal. By order filed July 10, 2002, the circuit court appointed Christopher Dean to represent Mr. VanHoose on the habeas petition.

In January 2003, Mr. Dean filed a motion to withdraw as habeas counsel. Apparently, the motion to withdraw was granted, and new counsel appointed because, in June 2003, a new habeas attorney, Chad Berry, filed a motion to withdraw as counsel for Mr. Van-Hoose.[21] Mr. Berry based his motion upon the fact that Mr. VanHoose already was being represented by Mr. Craig.[22] The circuit court granted Mr. Berry's motion and substituted Mr. Craig as habeas counsel.

Mr. Craig filed a memorandum in support of the habeas petition on January 26, 2005. By order filed June 8, 2006, the trial court denied the petition for habeas relief. Further, the circuit court entered a separate order on the same day resentencing Mr. VanHoose for the purpose of filing an appeal of his conviction. The denial of the habeas petition was not appealed, nor did Mr. Van-Hoose seek a direct appeal of his conviction based upon this resentencing order.

On October 16, 2006, Mr. VanHoose filed a motion to remove Mr. Craig as habeas counsel. By order entered November 30, 2006, the trial court removed Mr. Craig as counsel and appointed Sean Maynard as habeas counsel. By order entered March 7, 2007, the trial court allowed Mr. Maynard to withdraw as counsel and appointed Ron Salmons as habeas counsel.

On January 14, 2008, Mr. VanHoose, through counsel, filed a second habeas petition that was styled as an amended memorandum in support of habeas relief.[23] The memorandum sought relief on the basis that Mr. VanHoose was not prosecuted within the term of court provided under W. Va.Code § 62–3–1 or W. Va.Code § 62–3–21, and that he was denied a right of appeal. By order

filed April 30, 2009, the trial court denied habeas relief, but resentenced Mr. VanHoose so that he could file a direct appeal of his convictions.[24]

## IV.

### STANDARD OF REVIEW

In this case, Mr. VanHoose contends that he was denied a speedy trial because the trial court granted the State's requests for continuances beyond the one-term rule of W. Va. Code § 62–3–1 and the three-term rule of W. Va.Code § 62–3–21. This Court has consistently held that "[a] motion for continuance is addressed to the sound discretion of the trial court, and its ruling will not be disturbed on appeal unless there is a showing that there has been an abuse of discretion." Syl. pt. 2, *State v. Bush*, 163 W.Va. 168, 255 S.E.2d 539 (1979).

Additionally, Mr. VanHoose assigns error to the trial court's denial of his petition for habeas corpus, wherein he alleged ineffective assistance of counsel due to his initial appellate counsel's failure to file an appeal of his conviction. This Court has held that "[a]n ineffective assistance of counsel claim presents a mixed question of law and fact; we review the circuit court's findings of historical fact for clear error and its legal conclusions de novo." *State ex rel. Daniel v. Legursky*, 195 W.Va. 314, 320, 465 S.E.2d 416, 422 (1995).

With these standards in mind, we review the issues presented.

## V.

### DISCUSSION

This opinion will address the arguments set forth by Mr. VanHoose. First, we will address the alleged denial of his right to a speedy trial. Second, we will review his

---

**21.** The record does not contain any order showing that Mr. Dean was allowed to withdraw or that Mr. Berry was appointed in his place.

**22.** It appears that Mr. Craig eventually received notice that he had been appointed to represent Mr. VanHoose, but the trial court was not aware that Mr. Craig had received such notice.

**23.** The second habeas petition alleged the exact same issues that were ruled upon in the first habeas petition which was never appealed.

**24.** By order entered August 25, 2009, the trial court extended the time for filing an appeal to October 30, 2009.

argument regarding counsel's failure to timely file an appeal.

### A. Denial of Right to Speedy Trial

■ The first issue we address is Mr. VanHoose's contention that the trial court should have dismissed the indictment because he was not afforded a trial within the time frame established by W. Va.Code § 62-3-1 and W. Va.Code § 62-3-21. Although Mr. VanHoose's brief sets out separate arguments for each statute, we will address the statutes together because one common basis was relied upon by the trial court in granting the State's requests for continuances.

■ To begin, this Court has held that "[t]he right to a trial without unreasonable delay is basic in the administration of criminal justice and is guaranteed by both the State and federal constitution. U.S. Const. Amend. VI; W. Va. Const., Art. 3, § 14." Syl. pt. 1, *State v. Foddrell*, 171 W.Va. 54, 297 S.E.2d 829 (1982). It is provided under W. Va.Code § 62-3-1 that, absent good cause, a defendant must be tried in the term of court in which he/she was indicted.[25] It is provided under W. Va.Code § 62-3-21 that, "subject to various exceptions, ... a defendant in a criminal case is entitled to discharge from prosecution if three regular terms of court conclude, following the term of indictment, without a trial." *State ex rel. McCourt v. Alsop*, 220 W.Va. 644, 647, 648 S.E.2d 631, 634 (2007).[26] This Court has explained that "[w]hereas W. Va.Code, 62-3-1, provides a defendant with a statutory right to a trial in the term of his indictment, it is W. Va.Code 62-3-21, rather than W. Va.Code

62-3-1, which is the legislative adoption or declaration of what ordinarily constitutes a speedy trial within the meaning of U.S. Const., amend. VI, and W. Va. Const., art. III, § 14." Syl. pt. 1, *State ex rel. Shorter v. Hey*, 170 W.Va. 249, 294 S.E.2d 51 (1981). In Syllabus point 4 of *Good v. Handlan*, 176 W.Va. 145, 342 S.E.2d 111 (1986), we stated:

The possible reasons justifying good cause for a continuance under W. Va.Code, 62-3-1, are broader than the causes listed in W. Va.Code, 62-3-21, as valid reasons for not counting a particular term. As a consequence, the causes justifying continuances listed in the three-term rule, W. Va.Code, 62-3-21, may be applied in a one-term rule situation, but the general good cause standard in W. Va.Code, 62-3-1, may not be applied in a W. Va.Code, 62-3-21 situation.

■ This Court, in the case of *State v. Foddrell*, 171 W.Va. 54, 297 S.E.2d 829 (1982), established the test to be used to determine whether a defendant has been denied the right to a speedy trial:

A determination of whether a defendant has been denied a trial without unreasonable delay requires consideration of four factors: (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of his rights; and (4) prejudice to the defendant. The balancing of the conduct of the defendant against the conduct of the State should be made on a case-by-case basis and no one factor is either necessary or sufficient to support a finding

---

**25.** The relevant language of W. Va.Code § 62-3-1 (1981) (Repl.Vol.2005) provides:

When an indictment is found in any county, against a person for a felony or misdemeanor, the accused, if in custody, or if he appear in discharge of his recognizance, or voluntarily, shall, unless good cause be shown for a continuance, be tried at the same term.

We previously have explained that the one-term rule does not embody a right of constitutional dimension, but "provides a personal right to the defendant to be tried more expeditiously than the Constitution requires." *State ex rel. Workman v. Fury*, 168 W.Va. 218, 221, 283 S.E.2d 851, 853 (1981).

**26.** The relevant language of W. Va.Code § 62-3-21 (1959) (Repl.Vol.2005) provides:

Every person charged by presentment or indictment with a felony or misdemeanor, and remanded to a court of competent jurisdiction for trial, shall be forever discharged from prosecution for the offense, if there be three regular terms of such court, after the presentment is made or the indictment is found against him, without a trial, unless the failure to try him was caused by his insanity; or by the witnesses for the State being enticed or kept away, or prevented from attending by sickness or inevitable accident; or by a continuance granted on the motion of the accused; or by reason of his escaping from jail, or failing to appear according to his recognizance, or of the inability of the jury to agree in their verdict.

that the defendant has been denied a speedy trial.

Syl. pt. 2, *Foddrell, id.* We will analyze the facts presented in this case under the *Foddrell* factors.[27]

■ **(1) Length of delay.** Under *Foddrell,* our first inquiry is to determine the length of the delay between the date of the indictment and the date of conviction. The following observations have been made regarding this first factor:

> The first factor serves a dual function. First, it is a threshold requirement; if the delay is not uncommonly long, judicial examination ceases. Once this threshold is satisfied, this first factor must be considered as one factor among the several in the speedy trial analysis.

*United States v. Schreane,* 331 F.3d 548, 553 (6th Cir.2003) (citations omitted).[28] In other words, "the length of the delay is a triggering mechanism. Until there is some delay which is presumptively prejudicial there is no necessity for inquiry into the other factors that go into the balance." *State v. Drachman,* 178 W.Va. 207, 212, 358 S.E.2d 603, 608 (1987).

■ In the instant proceeding, Mr. VanHoose was indicted during the 1998 September term of court on September 18, 1998.[29] Under the one-term rule of W. Va.Code § 62–3–1, Mr. VanHoose had to be tried before the start of the 1999 January term of court.[30] He was not tried. Under the three-term rule of W. Va.Code § 62–3–21, Mr. VanHoose had to be tried before the start of the 2000 January term of court. However, a trial did not occur prior to that time. Mr. VanHoose did not enter a guilty plea until September 7, 2000.

In sum, the delay from the date of the indictment, until Mr. VanHoose entered a guilty plea, was approximately two years.[31] Federal courts have indicated that, for the purposes of speedy trial analysis, "[a] delay approaching one year is presumptively prejudicial." *Schreane,* 331 F.3d at 553 (citation

27. It will be noted that although the *Foddrell* factors are being applied here to a claim of post-indictment delay, those factors are also used for alleged pre-indictment delay. See *State v. Jessie,* 225 W.Va. 21, 689 S.E.2d 21 (2009) (holding that two and one-half year delay between arrest and indictment did not violate defendant's constitutional right to speedy trial).

28. The *Foddrell* factors were adopted by this Court from the United States Supreme Court decision in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

29. Pursuant to Rule 2.06 of the West Virginia Trial Court Rules, the annual terms of the Circuit Court of Cabell County begin on the first Monday in January and May and on the second Tuesday in September.

30. With respect to the one-term rule, Mr. Van-Hoose concedes that two continuances sought by his counsel prevented the case from being tried until the 1999 September term of court. However, Mr. VanHoose correctly notes that he filed a motion for trial in the 1999 September term of court under W. Va.Code § 62–3–1. In denying the motion and continuing the trial, the circuit court found that W. Va.Code § 62–3–1 was no longer applicable and that the three-term rule of W. Va.Code § 62–3–21 was applicable. We agree with Mr. VanHoose that the trial court was wrong in finding that W. Va.Code § 62–3–1 was not applicable to his motion. This Court has held that:

> W. Va.Code § 62–3–1, is not limited to the term of court at which an indictment is returned, but is applicable to any term of court in which an accused asserts his right to a prompt trial. Where such right is asserted, the accused must be tried during that term unless good cause can be shown for a continuance. Syl. pt. 7, *Good v. Handlan,* 176 W.Va. 145, 342 S.E.2d 111 (1986). Although the trial court was wrong in finding W. Va.Code § 62–3–1 inapplicable to the motion for trial, for the reasons set out in the body of this opinion, the trial court did not abuse its discretion in denying the motion and granting a continuance. See *Murphy v. Smallridge,* 196 W.Va. 35, 36–37, 468 S.E.2d 167, 168–169 (1996) ("An appellate court is not limited to the legal grounds relied upon by the circuit court, but it may affirm or reverse a decision on any independently sufficient ground that has adequate support.").

31. Because of our ultimate resolution of the speedy trial issue, it is not necessary for this Court to dissect the pretrial delay in order to deduct time for the two continuances obtained by Mr. VanHoose. It will be noted, however, that this Court has held that "[a]ny term at which a defendant procures a continuance of a trial on his own motion after an indictment is returned ..., is not counted as one of the three terms in favor of discharge from prosecution under the provisions of Code, 62–3–21, as amended." Syl. pt. 2, in part, *State ex rel. Spadafore v. Fox,* 155 W.Va. 674, 186 S.E.2d 833 (1972).

omitted).[32] Accordingly, the delay in this case is sufficient to continue the *Foddrell* analysis.

■ **(2) Reasons for the delay.** The next issue we address is the reason for the two-year delay in prosecuting Mr. VanHoose. The record indicates that all of the State's requests for continuances were based upon the unavailability of a witness: Mrs. Van-Hoose. We have held that "to warrant a continuance on the basis of the absence of . . . [a] witness it is necessary that the party seeking the continuance . . . . show the materiality and importance of the witness's proposed testimony to the issues to be tried." *State v. Wilkinson,* 181 W.Va. 126, 129, 381 S.E.2d 241, 244 (1989).

Mr. VanHoose's defense to his prosecution was that Mrs. VanHoose committed the murders. To support this defense, Mr. Van-Hoose intended to rely on earlier statements by Mrs. VanHoose, wherein she indicated that she had killed the victims. The State wanted to call Mrs. VanHoose as a witness to explain her earlier statements and to testify that Mr. VanHoose actually killed the victims. These facts clearly establish that Mrs. VanHoose was a material witness.

■ This Court previously has indicated that, "[g]enerally, to warrant a continuance on the basis of the absence of [a] material witness it is necessary that the party seeking the continuance use due diligence to procure the attendance of the witness." *Wilkinson,* 181 W.Va. at 129, 381 S.E.2d at 244. The record shows that the State was diligent in trying to procure Mrs. VanHoose for trial. However, Mr. VanHoose invoked the marital testimonial privileges provided by W. Va. Code § 57–3–3 (1923) (Repl.Vol.2005)[33] and W. Va.Code § 57–3–4 (1923) (Repl.Vol. 2005)[34] to prevent Mrs. VanHoose from being available to testify at trial.[35] In seeking

---

**32.** The United States Supreme Court has explained that " 'presumptive prejudice' does not necessarily indicate a statistical probability of prejudice; it simply marks the point at which courts deem the delay unreasonable enough to trigger the [speedy trial] enquiry." *Doggett v. United States,* 505 U.S. 647, 652 n. 1, 112 S.Ct. 2686, 2691 n. 1, 120 L.Ed.2d 520 (1992).

**33.** West Virginia Code § 57–3–3 (1923) (Repl. Vol.2005) provides, in relevant part:

> In criminal cases husband and wife shall [not] . . . be compelled, nor, without the consent of the other, allowed to be called as a witness against the other[.]

With respect to the marital testimonial privilege provided by W. Va.Code § 57–3–3, we have held that

> W. Va.Code, 57–3–3 (1923), absolutely prohibits the spouse of a criminal defendant from testifying against the defendant, except where the defendant is charged with a crime against the person or property of the other spouse or certain other relatives. Where properly invoked, this statute precludes all adverse testimony by a spouse, not merely disclosure of confidential communications. This spousal protection applies only to legally recognized marriages and lasts only as long as the legal marriage exists.

Syl. pt. 11, *State v. Bradshaw,* 193 W.Va. 519, 457 S.E.2d 456 (1995). We also have recognized that "W. Va.Code, 57–3–3 [1923], . . . applies to married people who are in the process of getting a divorce." Syl. pt. 1, *State v. Evans,* 170 W.Va. 3, 287 S.E.2d 922 (1982).

**34.** West Virginia Code § 57–3–4 (1923) (Repl. Vol.2005) provides:

> Neither husband nor wife shall, without the consent of the other, be examined in any case as to any confidential communication made by one to the other while married, nor shall either be permitted, without such consent, to reveal in testimony after the marriage relation ceases any such communication made while the marriage existed.

Regarding the marital testimonial privilege provided by W. Va.Code § 57–3–4, we have held that

> [t]he privilege against disclosure of confidential marital communications embodied in W. Va.Code § 57–3–4 [1923] prohibits disclosure of knowledge derived from observation of the acts or conduct of one's spouse undertaken or performed in reliance on the confidence of the marital relation.

Syl. pt. 1, *State v. Robinson,* 180 W.Va. 400, 376 S.E.2d 606 (1988). This Court also has held that "[o]nly the accused can waive the marital confidence privilege [under W. Va.Code § 57–3–4] during a criminal prosecution." Syl. pt. 5, *State v. Bohon,* 211 W.Va. 277, 565 S.E.2d 399 (2002).

**35.** We have observed the following regarding the marital testimonial privileges:

> West Virginia recognizes two marital privileges: the spousal testimony privilege and the marital confidence privilege. The two are distinct and must be analyzed separately. The spousal testimony privilege is much broader than the marital confidence privilege in that it bars all adverse testimony; whereas, the marital confidence privilege applies only to confidential communications and can be asserted even after the dissolution of the marriage. On

its first continuance in the case, the State informed the trial court that, in April 1999, Mrs. VanHoose had filed for a divorce in Kentucky and that, after the divorce was final, Mr. VanHoose could no longer prevent her from testifying. The trial court granted the State's initial continuance and all subsequent continuances until the divorce became final. When the trial court determined that the divorce was final, a trial date was set for September 8, 2000.[36]

The State contends that Mr. VanHoose could have been prosecuted within the time frames set out under W. Va.Code § 62–3–1 and W. Va.Code § 62–3–21 had he consented to Mrs. VanHoose testifying at trial. Mr. VanHoose asserts that he did not have to give up his right to prevent his wife from testifying against him in order to be tried within the time frames of W. Va.Code § 62–3–1 and W. Va.Code § 62–3–21.

We agree with Mr. VanHoose that he did not have to waive his marital testimonial privilege so that Mrs. VanHoose could testify against him. However, we disagree with Mr. VanHoose's assertion that the State could not seek continuances until Mrs. VanHoose was available to testify against him. Insofar as Mr. VanHoose could invoke his statutory right to preclude his wife from testifying against him, the State could likewise invoke its right to seek continuances because of the unavailability of a material witness. See *Barker v. Wingo,* 407 U.S. 514, 531, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972) ("[A] valid reason, such as a missing witness, should serve to justify appropriate delay."); *People v. Roberts,* 146 P.3d 589 (Colo.2006) (no speedy trial violation where the reason for State seeking continuance was because material witness was giving birth); *State v. Nguyen,* 68 Wash.App. 906, 847 P.2d 936, 940 (1993) ("The unavailability of a material State witness is a valid ground for continuing a criminal trial[.]").

The issue of a defendant's refusal to waive a right, which would allow for a timely trial, was addressed by the court in *People v. Collins,* 382 Ill.App.3d 149, 320 Ill.Dec. 179, 886 N.E.2d 1248 (2008). The defendant in *Collins* was prosecuted for murder. On the day of trial, the prosecutor learned that one of its witnesses, a police officer, had retained the defendant's attorney to represent the officer's son in an unrelated criminal case. The trial court determined that a potential conflict existed because defense counsel represented the son of a witness for the prosecutor. The trial court gave the defendant the option of waiving the conflict of interest and thereby keeping his counsel, or having his counsel disqualified because of his refusal to waive the conflict of interest. The defendant refused to waive the conflict of interest; consequently, the trial court disqualified defense counsel. However, about a month after defense counsel was disqualified, the defendant informed the trial court that he would waive the conflict of interest to allow defense counsel to represent him. The trial court accepted the waiver and allowed the attorney to continue representing the defendant.

After the defendant's counsel resumed his representation of the defendant, the prosecutor sought a continuance because its witnesses had become unavailable during the delay. The trial court granted a continuance. Eventually the defendant was tried and convicted of second degree murder. In the appeal, the defendant argued that, because of the continuance granted to the State, he was denied his right to a speedy trial. The appellate court rejected the contention as follows:

> [D]efendant played an active role in exploiting the circumstances to place himself in a position to make a speedy-trial claim. Defendant insisted that Stone continue serving as his trial attorney despite the trial court's finding of a serious potential for conflict. Further, after Stone was dis-

---

the other hand, the spousal testimony privilege is narrower than the marital confidence privilege in that it applies only to criminal proceedings and can be asserted only during the marriage.

Syl. pt. 9, *State v. Bradshaw,* 193 W.Va. 519, 457 S.E.2d 456 (1995).

**36.** As previously mentioned, the day before the trial would have been held, Mr. VanHoose pled guilty.

qualified, defendant ['s] ... replacement attorney ... assisted defendant in ultimately having Stone reinstated as defense counsel. However, the reinstatement occurred only after the State's witnesses had been returned to their military duties. Had defendant accepted the court's waiver offer when it was first made, his trial would have undoubtedly commenced within the 120–day speedy-trial term. The State was ready at that time for trial to begin, and its witnesses were available to testify. In other words, it was defendant who set in motion the sequence of events that delayed his trial until November 2005.

... For all these reasons, we conclude that the court did not abuse its discretion in attributing to defendant the delay in this case.

*Collins*, 320 Ill.Dec. 179, 886 N.E.2d at 1263–64.

██ The decision in *Collins* is instructive for the principle of law that, if a defendant refuses to waive a right which would afford him/her a speedy trial, the defendant cannot complain of the delay in the trial caused by the refusal to waive that right. In the final analysis, Mr. VanHoose's assertion of his right to prevent Mrs. VanHoose from testifying for the State caused the delay in his trial. This Court has observed that "[i]t is uniformly held in other jurisdictions that if the delay in bringing the accused to trial is attributable to the accused in any manner, the accused cannot take advantage of such delay and contend that he has been denied a speedy trial." *State ex rel. Spadafore v. Fox*, 155 W.Va. 674, 679, 186 S.E.2d 833, 836 (1972). *See also State v. Diaz*, 334 Mont. 479, 148 P.3d 628, 634 (2006) ("In showing that [defendant] unlawfully solicited Davies in an attempt to prevent her from testifying, we conclude that the State produced a 'valid reason' for the delay[.]").

We conclude that the reason asserted by the State for the continuances was sufficient to warrant the trial court granting the continuances.

██ **(3) The defendant's assertion of his right to a speedy trial and the prejudice to the defendant.** Under the third and fourth *Foddrell* factors, a determination must be made as to whether Mr. VanHoose asserted his right to a speedy trial, and whether he was prejudiced by the delay of his trial.

The record is clear. Mr. VanHoose timely asserted his right to be tried under the time frames set out under W. Va.Code § 62–3–1 and W. Va.Code § 62–3–21. However, the record does not contain any evidence to show that Mr. VanHoose was prejudiced by the delay. That is, there is no evidence that the delay caused critical witnesses to be unavailable or evidence to be lost. Although Mr. VanHoose contends in his brief that two of his witnesses died while the case was pending, Mr. VanHoose does not state who those witnesses were and what testimony those witnesses would have given. Without any indication as to who the witnesses were and what evidence they would have provided, we cannot find prejudice from a bare assertion that two witnesses died. *See Foddrell*, 171 W.Va. at 58, 297 S.E.2d at 833 ("There was no showing that the deceased witness would have testified or what exactly her testimony would have been had she testified. Even if we assume that her testimony would have supported the appellant's assertions at trial, there was no showing that such testimony was critical to the appellant's defense at trial."). See also *United States v. Franscioni*, 81 Fed.Appx. 629, 631 (9th Cir.2003) ("Franscioni offers no more than a bare assertion that the three unavailable witnesses would have offered testimony helpful to his defense.... This falls far short of making a showing of actual prejudice attributable to the delay between indictment and trial."); *United States v. Nazzaro*, 472 F.2d 302, 304 n. 3 (2nd Cir.1973) ("[V]ague and conclusory claims of prejudice—regarding ... unavailable witnesses—cannot support a [speedy trial] claim under the Sixth Amendment."); *Ferguson v. State*, 303 Ga.App. 341, 693 S.E.2d 578, 582 (2010) ("If the defendant's argument is that a witness has become unavailable, he must show that the unavailable witness could supply material evidence for the defense." (internal quotations and citations omitted.)).

In sum, after balancing the four *Foddrell* factors, only the first and third factors weigh

in favor of Mr. VanHoose, *i.e.*, length of the delay and assertion of the right to a speedy trial. The second and fourth factors weigh in favor of the State. Considering all the factors as a whole, we find that Mr. VanHoose's right to a speedy trial was not violated because the delay was attributable to his conduct in preventing a material witness for the State from testifying. The conduct by Mr. VanHoose established good cause, as contemplated by W. Va.Code § 62–3–1 and W. Va. Code § 62–3–21, for the State to seek continuances in this case.[37] *See* Syl. pt. 1, in part, *State v. Alexander*, 161 W.Va. 776, 245 S.E.2d 633 (1978) ("In a criminal case the State may have a continuance to the next term of court when defendant's actions have substantially inhibited the prosecutor's trial preparation. Such continuance violates neither the federal or State constitutions[.]") *overruled on other grounds by State v. Kopa*, 173 W.Va. 43, 311 S.E.2d 412 (1983); *See also Commonwealth v. Vonkanel*, No. 09–P–206, 2010 WL 3447503, at *3 (Mass.App.Ct. Sept. 3, 2010) ("The various delays of which the defendant complains were chiefly caused by him.... Thus, no violation of the defendant's right to a speedy trial occurred[.]"); *Poole v. State*, 826 So.2d 1222, 1230 (Miss.2002) ("[I]n the case at bar, [the defendant] was responsible for most of the delay. He fails to show any real prejudice as he did not state or prove any exculpatory evidence which would have been available had he been brought to trial earlier. For these reasons we find that this issue is without merit.").

### B. Failure to Timely File Appeal

 In the habeas corpus proceeding, Mr. VanHoose argued that he was denied effective assistance of counsel because his appellate counsel, George Beter, failed to file an appeal of his conviction.[38] The circuit court found that Mr. Beter was not deficient in his appellate representation of Mr. Van-Hoose.[39]

 This Court has held that,

[i]n the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984):(1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

Syl. pt. 5, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995). The decision in *Miller* further held:

In reviewing counsel's performance, courts must apply an objective standard

---

37. As noted previously in this opinion, one of the factors under W. Va.Code § 62–3–21 for allowing a trial to go beyond three terms of court, is that of "witnesses for the State being ... kept away." *See State ex rel. Workman v. Fury*, 168 W.Va. 218, 221, 283 S.E.2d 851, 853 (1981) ("Since W. Va.Code, 62–3–21, [1959] is the statutory articulation of the constitutional right to a speedy trial, ... there is a burden on the State to show affirmatively on the record that one of the enumerated statutory grounds for further delay is present.").

38. It should be noted that, although Mr. Van-Hoose presented his speedy trial issues in his habeas petition, the trial court did not rule on those issues. Instead, the trial court's habeas order resentenced Mr. VanHoose so that he could appeal the speedy trial issues directly to this Court.

39. In deciding to grant or deny habeas relief, a circuit court is required to make adequate findings of fact and conclusions of law. *See* Syl. pt. 1, *State ex rel. Watson v. Hill*, 200 W.Va. 201, 488

S.E.2d 476 (1997) ("West Virginia Code section 53–4A–7(c) (1994) requires a circuit court denying or granting relief in a habeas corpus proceeding to make specific findings of fact and conclusions of law relating to each contention advanced by the petitioner, and to state the grounds upon which the matter was determined."). In the instant case, the circuit court's habeas order set forth legal conclusions in denying relief, but failed to cite any supporting facts. Ordinarily, this Court would remand this case for entry of an order setting out findings of fact. However, because the record in this case is adequately developed, we will not remand for entry of such an order. *See State ex rel. Farmer v. Trent*, 209 W.Va. 789, 796 n. 3, 551 S.E.2d 711, 718 n. 3 (2001) (declining to remand for entry of proper habeas order); *State ex rel. Vernatter v. Warden, W. Va. Penitentiary*, 207 W.Va. 11, 19, 528 S.E.2d 207, 215 (1999) ("While in most circumstances the failure to make specific findings of fact and conclusions of law regarding an issue raised in habeas proceedings would necessitate a remand, we need not take such action in the present case[.]").

and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue.

Syl. pt. 6, *Miller, id.*

The State contends that the issue of ineffective assistance of appellate counsel is moot because Mr. VanHoose has now appealed his conviction. The State's position is inconsistent with our case law.

This Court previously has held that

[o]ne convicted of a crime is entitled to the right to appeal that conviction and where he is denied his right to appeal such denial constitutes a violation of the due process clauses of the State and Federal Constitutions and renders any sentence imposed by reason of the conviction void and unenforceable.

Syl., *State ex rel. Bratcher v. Cooke,* 155 W.Va. 850, 188 S.E.2d 769 (1972). *See also Rhodes v. Leverette,* 160 W.Va. 781, 786, 239 S.E.2d 136, 140 (1977). Additionally, we have held that,

[i]n determining appropriate relief in habeas corpus for ineffective assistance of counsel in not prosecuting a timely appeal, the court should consider whether there is a probability of actual injury as a result of such denial, or alternatively whether the injury is entirely speculative or theoretical, and where the denial of a timely appeal was probably harmless, except in the case of extraordinary dereliction on the part of the State the appropriate remedy is not discharge but such remedial steps as will

permit the effective prosecution of an appeal.

Syl. pt. 2, *Carter v. Bordenkircher,* 159 W.Va. 717, 226 S.E.2d 711 (1976).[40] It is clear from the prior decisions of this Court that a habeas defendant may be entitled to relief in the form of an appeal or discharge of the conviction if he/she prevails on a claim of ineffective assistance of counsel in not prosecuting an appeal. Consequently, we reject the State's contention that, insofar as Mr. VanHoose has now perfected an appeal, his ineffective assistance of counsel claim is moot.

Although we reject the State's mootness argument, we agree with the trial court that, during the habeas proceeding, Mr. VanHoose failed to establish that Mr. Beter was deficient in his appellate representation of Mr. VanHoose. A predicate for relief on a claim of ineffective assistance of counsel is a showing that counsel's conduct was deficient under the *Strickland–Miller* test. That is, we have made clear that, "[i]n deciding ineffective ... assistance claims, a court need not address both prongs of the conjunctive standard of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and *State v. Miller,* 194 W.Va. 3, 459 S.E.2d 114 (1995), but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test." Syl. pt. 5, *State ex rel. Daniel v. Legursky,* 195 W.Va. 314, 465 S.E.2d 416 (1995). Under the facts of this case, we have determined that we need only address the first prong of the *Strickland–Miller* test.

During the habeas proceeding, only two witnesses were called: Mr. Beter and Mr. Craig. Mr. Beter testified that, on September 8, 2000, the trial court appointed him to represent Mr. VanHoose in an appeal. However, because of problems in getting transcripts of the hearings held in the case, Mr.

---

40. With respect to the issue of dereliction, we have held the following:

Factors to be considered in determining whether there has been extraordinary dereliction are: the clarity and diligence with which the relator has moved to assert his right of appeal; the length of time that has been served on the underlying sentence measured against the time remaining to be served; whether prior writs have been filed or granted involving the right of appeal; and the related question of whether resentencing has occurred in order to extend the appeal period. While extraordinary dereliction on the part of the State does not require a showing of malice or ill will, certainly if such is shown it would be a significant factor.

Syl. pt. 6, *Rhodes v. Leverette,* 160 W.Va. 781, 239 S.E.2d 136 (1977).

Beter was forced to file four motions seeking an extension of time within which to file an appeal.[41] The trial court granted each motion. Mr. Beter further testified that shortly after all the transcripts were produced, the attorney-client relationship with Mr. Van-Hoose deteriorated.[42] As a consequence, Mr. Beter filed a motion to withdraw as counsel on September 19, 2001. The trial court subsequently wrote a letter to Mr. VanHoose asking him to respond to the withdrawal motion. Mr. VanHoose informed the court, by letter dated October 12, 2001, that irreconcilable differences existed with Mr. Beter and that he wanted new appellate counsel appointed.[43] By order entered November 14, 2001, the trial court removed Mr. Beter as appellate counsel.

Mr. Craig testified during the habeas proceeding that the circuit court appointed him, on March 21, 2002, to represent Mr. Van-Hoose. Mr. Craig stated that, because of a delay in his receipt of the criminal appointment, there was confusion as to whether he was appointed as appellate counsel or as counsel on the first habeas petition filed by Mr. VanHoose.[44] Further, Mr. Craig testified that he had the option of having Mr. VanHoose resentenced so that an appeal could be filed or of abandoning the appeal and pursuing a habeas challenge. Mr. Craig testified to this issue during the habeas proceeding as follows:

Q. —it is common for people to be re-sentenced to perfect their appellate time?

A. Yes. I can tell you this. Every time I have dealt with Judge Ferguson and we have gone over that time period, if I have had a valid reason for doing so, Judge Ferguson has always re-sentenced people.

Q. So that was an option in this case rather than filing a Habeas? An option would have been just to go to the Judge and say, "Hey, we need to re-sentence this guy so I can file his appeal?"

A. Right. In fact, I think we did talk about that some.

. . . .

Q. So, you had a tactical choice to make?

A. Yes.

Q. As to whether to have him re-sentenced and file the appeal or go the Habeas route?

A. Right.

Q. And you chose the Habeas route?

A. Yes, I did.

Based upon the testimony of Mr. Beter and Mr. Craig, it is clear to this Court that Mr. VanHoose did not establish the first prong of the *Strickland–Miller* test, *i.e.*, a deficiency in Mr. Beter's appellate representation of him. The record demonstrates that, during the time that Mr. Beter was appellate counsel, he took the necessary actions that a

**41.** There was no evidence to suggest that Mr. Beter did anything wrong in failing to timely obtain transcripts.

**42.** Specifically, the record shows that, by letter dated July 23, 2001, Mr. Beter informed Mr. VanHoose that he had all of the transcripts and that he was prepared to file an appeal based upon the facts outlined in the writ of prohibition that was previously filed. In a letter dated August 16, 2001, Mr. VanHoose wrote to Mr. Beter objecting to what would be argued in the appeal and demanded that Mr. Beter include in the appeal petition an eight page document that was enclosed in the letter. It appears that this disagreement set in motion the breakdown in the attorney-client relationship.

**43.** The record indicates that, at the time Mr. VanHoose wrote to the court, an order had been entered extending the appeal period until October 31, 2001.

**44.** The confusion that Mr. Craig testified to was attributed to the correspondence he received

from the trial court. The record indicates that the trial court entered an order that was filed on March 21, 2002, appointing Mr. Craig to represent Mr. VanHoose in the first habeas petition. This order was mailed to Mr. Craig, but was returned to the court as unclaimed. On July 11, 2002, the trial court wrote a letter to Mr. Craig which stated:

On March 21, 2002, I entered an Order appointing you to represent [Mr. VanHoose] in his appeal to the West Virginia Supreme Court of Appeals. On the same date a copy of the Order of Appointment was mailed to you. . . . On April 11, 2002, this certified mail was returned to the Circuit Clerk's office as unclaimed.

Please discuss this matter with me immediately. I am concerned that the defendant has never had an opportunity to appeal the matter to the West Virginia Supreme Court of Appeals.

reasonable criminal defense attorney would take to obtain transcripts of the hearings conducted in the case. As a result of delays in receiving the transcripts, Mr. Beter filed motions to extend the appeal period.[45] All of the appeal extension motions were granted. Further, the evidence at the habeas proceeding clearly showed that Mr. VanHoose caused the attorney-client relationship to break down to the point of preventing Mr. Beter from actually filing an appeal. Moreover, after Mr. VanHoose requested the trial court to remove Mr. Beter as appellate counsel, Mr. VanHoose abandoned his direct appeal and chose to pursue two habeas challenges of his conviction.

Although this Court has grave concerns over the fact that it took almost nine years for Mr. VanHoose to perfect an appeal of his conviction, the fault in this delay was not attributable to any conduct by Mr. Beter. In the final analysis, the record in this case indicates that, when Mr. VanHoose obtained new appellate counsel, a "strategic" decision was made to abandon the appeal to make a spurious habeas argument that Mr. Beter failed to prosecute an appeal. *See Roe v. Flores-Ortega,* 528 U.S. 470, 477, 120 S.Ct. 1029, 1035, 145 L.Ed.2d 985 (2000) ("[A] defendant who explicitly tells his attorney not to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently.").

## VI.

## CONCLUSION

We affirm the circuit court's order sentencing Mr. VanHoose to imprisonment for life with mercy and a suspended consecutive sentence of forty years. Further, we affirm the order denying habeas corpus relief on the claim of ineffective assistance of appellate counsel.

Affirmed.

---

45. The record indicates that at least nineteen hearing transcripts were obtained.