# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

Ray P.,
**Petitioner Below, Petitioner**

**FILED**

**October 23, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs) No. 16-1094** (Putnam County 13-C-196)

**David Ballard, Warden,**
**Mount Olive Correctional Complex,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner Ray P., by counsel Timothy J. LaFon, appeals the Circuit Court of Putnam County's October 31, 2016, order denying his petition for writ of habeas corpus.[1] Respondent David Ballard, Warden, by counsel Zachary Aaron Viglianco, filed a response. Petitioner filed a reply. On appeal, petitioner argues that the circuit court erred in denying his petition on the grounds of ineffective assistance of counsel, involuntary guilty plea, excessive sentence, and insufficient evidence of actual guilt upon which to accept a guilty plea.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On July 16, 2008, petitioner was indicted on two counts of sexual abuse by a parent, guardian, or custodian and two counts of incest. Petitioner submitted to a forensic psychological evaluation for purposes of determining his competency to stand trial and criminal responsibility for these charges.

The evaluator concluded that petitioner was not suffering from a mental disease or defect that would prevent him from appreciating the criminality of his conduct or conforming his behavior to the requirements of the law, found no evidence that he ever suffered from psychosis that would have impaired his functioning or evidence to support a diagnosis of mental retardation, and determined that he was able to assist his attorney with a defense and understand

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

the charges against him.

The testing did reveal, however, some cognitive limitations. As a result, the evaluator recommended that petitioner "would benefit from repetition and definitions of complex terminology and legal concepts as well as the use of simpl[e] instructions. [Petitioner] will require coaching and education regarding the legal proceedings against him, but with instruction he should be able to understand and recall new data."

Despite these recommendations, the evaluator also highlighted that petitioner presented with only "limited cooperation" and "denied knowing very basic personal data." Throughout the report, the evaluator noted instances of "a higher level of functioning than he would admit or that his intellectual testing would demonstrate" and "an individual functioning at a higher cognitive level than [he] currently claims." His efforts on the testing were found to be "questionable," and his approach to the evaluation was found to be "an unsophisticated attempt to present himself in a negative manner for a secondary gain." The evaluator also stated that petitioner's "ineffective and unsophisticated attempt to present himself as impaired demonstrates his awareness that an unpleasant consequence may exist as a result of the instant offense and should be viewed as a primitive attempt to protect himself." In sum, the evaluator found that "[a]lthough cognitive limitations are likely due to the immature, poorly developed and inconsistent approach that he offered, they are not as severe as he projects."

Petitioner later decided to enter into a plea agreement with the State. Petitioner agreed to plead guilty to two counts of sexual abuse by a parent, guardian, or custodian in exchange for the dismissal of the remaining two incest counts. The State also agreed to recommend that the sentences imposed for the sexual abuse by a parent, guardian, or custodian charges be served concurrently. On November 14, 2008, petitioner was sentenced to an indeterminate term of not less than ten years nor more than twenty years for each sexual abuse by a parent, guardian, or custodian count. The sentences were ordered to run consecutively. Petitioner's trial counsel did not file a direct appeal, but he did file a "Motion for Reconsideration of Sentence," which was denied on March 24, 2009. Approximately four years later, on March 20, 2013, petitioner submitted a letter to the trial court requesting appointment of counsel to assist him with a petition for writ of habeas corpus. Shortly thereafter, counsel was appointed.

On June 12, 2013, petitioner filed a petition for writ of habeas corpus. Petitioner asserted in his petition that he received ineffective assistance of counsel on account of his trial attorney's failure to adequately explain and educate him as to his plea agreement and possible sentencing, that his plea was involuntary due to the inadequate explanation of the plea's terms and possible sentencing, and that trial counsel failed to file an appeal. Respondent filed a response in opposition to petitioner's petition. On March 16, 2016, the circuit court held an evidentiary hearing on petitioner's petition. The circuit court considered additional grounds raised in petitioner's *Losh* list and at the hearing, including whether there was sufficient evidence of guilt upon which the guilty plea could have been accepted, whether petitioner's sentence was more severe than expected, and whether his sentence was excessive.[2] By order dated October 31, 2016,

---

[2]*Losh v. McKenzie*, 166 W.Va. 762, 277 S.E.2d 606 (1981) (setting forth a list of possible grounds a habeas petitioner's counsel should discuss with his or her client).

the circuit court denied petitioner's petition for writ of habeas corpus. It is from this order that petitioner appeals.

This Court reviews appeals of circuit court orders denying habeas corpus relief under the following standard:

> "In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syllabus point 1, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006).

Syl. Pt. 1, *State ex rel. Franklin v. McBride*, 226 W.Va. 375, 701 S.E.2d 97 (2009).

Petitioner first assigns as error the circuit court's failure to find that he received ineffective assistance of counsel. Specifically, petitioner contends that his trial counsel failed to spend a sufficient amount of time on his case; properly investigate his case, including speak with a potential witness to whom the victim, his youngest daughter, purportedly recanted; file an appeal; and correctly advise petitioner as to his possible sentence and the possibility of probation.

> In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

Syl. Pt. 5, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995). Furthermore,

> [i]n reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue.

*Id.* at 6-7, 459 S.E.2d at 117-18, Syl. Pt. 6. Finally,

> [i]n cases involving a criminal conviction based upon a guilty plea, the prejudice requirement of the two-part test established by *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed. 674 (1984), and *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995), demands that a habeas petitioner

3

show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

Syl. Pt. 6, *State ex rel. Vernatter v. Warden, W.Va. Penitentiary*, 207 W.Va. 11, 528 S.E.2d 207 (1999).

With respect to the amount of time petitioner's trial counsel spent on his case, petitioner points to counsel's timesheets, which indicate that he billed only $216.50. Petitioner contends that this represents an insufficient amount of time given the gravity of petitioner's charges. Petitioner, however, ignores trial counsel's testimony at the evidentiary hearing as to the specific tasks counsel performed that are not reflected on that particular billing, that that particular voucher represented only a portion of the time spent on petitioner's case, and that he believes other billings were submitted. Moreover, petitioner was the respondent in an abuse and neglect proceeding that arose from the same conduct alleged in his underlying criminal matter. Petitioner's trial counsel represented him in that nearly factually-identical proceeding, and his billings and investigative work in that proceeding are also ignored by petitioner in advancing this assignment of error. These facts, coupled with the fact that petitioner cites no law to support any argument that a specific amount of time must be expended by trial counsel lest he or she be found to have rendered ineffective assistance of counsel, compel the finding that the circuit court did not abuse its discretion in finding that petitioner's arguments here failed to establish ineffective assistance of counsel.

Petitioner also contends that his trial counsel failed to adequately investigate his case, including speak with a potential witness to whom the victim allegedly recanted. Trial counsel admitted to not speaking with this potential witness, but he explained that he did so because, at about the same time petitioner identified this potential witness, petitioner's oldest daughter came forward and stated that she intended to testify against her father. Petitioner then admitted to trial counsel that "stuff had went on," and, while petitioner did not believe that his youngest daughter, the victim, would ultimately testify against him, he believed that his oldest daughter would. Petitioner then related to counsel that he did not wish to go to trial and wanted to seek a plea agreement. Petitioner's trial counsel, therefore, approached the State about a possible plea bargain.

Petitioner's argument here ignores the evidence adduced at his evidentiary hearing that it was he who changed the course of his case. Petitioner, upon learning that his oldest daughter intended to testify against him, decided that trial was no longer an option he wanted to pursue. Rather, he asked counsel about a plea agreement. Thus, we find that the circuit court did not abuse its discretion in finding that counsel did not render ineffective assistance of counsel based upon this allegation.

Petitioner further claims that he received ineffective assistance of counsel due to his counsel's failure to file an appeal. At petitioner's evidentiary hearing, petitioner's trial counsel testified that, at the time of petitioner's conviction, it was not the circuit court's practice to automatically appoint trial counsel to handle an appeal. Petitioner's trial counsel nonetheless provided petitioner with a packet instructing him to fill out certain documents and contact the

circuit court if petitioner wished to file an appeal. Petitioner's counsel testified that he did not hear anything else from either petitioner or the circuit court.

In addressing this ground, we begin by noting that "[a]ppointed trial counsel for an indigent criminal defendant who is convicted is required to continue representation of the defendant through the appeal process unless an order is entered relieving him of such obligation." Syl. Pt. 5, in part, *State v. Merritt*, 183 W.Va. 601, 396 S.E.2d 871 (1990). Thus, the circuit court's local practices cannot relieve counsel of this obligation. But, we have also held that "[w]hile the State is constitutionally obliged to appoint effective counsel to assist an indigent criminal defendant in his appeal, once this has been done there rests on the indigent criminal defendant some responsibility to make known to the court his counsel's inaction." Syl. Pt. 7, *Rhodes v. Leverette*, 160 W.Va. 781, 239 S.E.2d 136 (1977). Petitioner was provided with a written "Notice of Right to Appeal." Petitioner did not alert the circuit court to his alleged desire to prosecute an appeal nor did he make known counsel's inaction, assuming he articulated this desire to counsel.

We have also noted that a criminal defendant has limited grounds for appeal following entry of a guilty plea: "A direct appeal from a criminal conviction based on a guilty plea will lie where an issue is raised as to the voluntariness of the guilty plea or the legality of the sentence." Syl. Pt. 1, *State v. Sims*, 162 W.Va. 212, 248 S.E.2d 834 (1978). Petitioner concedes that his sentence falls within statutory limits, and he does not otherwise challenge the legality of his sentence. Thus, the only potential claim on appeal would have been the voluntariness of his guilty plea. As discussed below, we find petitioner's guilty plea to have been voluntarily given. As a result, we find that the circuit court did not abuse its discretion in concluding that petitioner failed to establish that the proceedings would have been different had counsel prosecuted an appeal.

Petitioner's final alleged instance of ineffective assistance of counsel concerns counsel's alleged failure to correctly advise him as to parole eligibility. Petitioner points to his psychological evaluation results that indicated he would need clear explanations throughout the course of his case. Petitioner also contends that his trial counsel informed him that he would, in fact, receive probation, and that he would not have entered into the plea agreement had he known that probation was not guaranteed. Petitioner also asserts as a separate assignment of error that his plea was not voluntarily given. Petitioner claims that he did not fully comprehend the potential consequences of entering into a plea agreement or that probation was not guaranteed. Petitioner claims that his ability to understand and comprehend matters is limited, and that he needed additional time and explanation than what was provided to be able to understand the terms of his plea agreement. Because these allegations are related, we address them in tandem.

At petitioner's plea hearing, petitioner's trial counsel informed the circuit court that he went through each of the twelve paragraphs of petitioner's plea agreement

> on at least two different occasions, actually three because [the prosecuting attorney] gave them to me in letter form before he actually accepted the plea. I explained every one of his rights. I wanted to make sure that he understood exactly what the plea would be and the two charges that were being dismissed, the

5

possible penalty. . . . Then we went through his options, what will happen if he was eligible for any kind of alternative sentencing, that he would have to get in counseling and so forth before he would be able to do that. And then went through the options where the Code says he could actually [sic] up to fifty years in any kind of probation or release even if he paroled out.

But we went through each and every one of those paragraphs in quite detail. Asked if he had any questions about those, I don't think he had any questions, and I think he understands what he's pleading guilty to.

Petitioner informed the court that he read the plea agreement. Although he admitted to having some difficulty reading "big words," he acknowledged that he asked his trial counsel to explain the meaning of those words. Petitioner proceeded to identify the crimes to which he was pleading and set forth the possible term of incarceration.

Petitioner also understood that the circuit court was under no obligation to follow any sentencing recommendation:

THE COURT: Am I required to follow the recommendation of the State?

THE DEFENDANT: No.

THE COURT: And likewise, if your lawyer makes a recommendation, am I required to follow what your lawyer says?

THE DEFENDANT: No.

The circuit court asked petitioner whether he had any questions about the plea agreement, and petitioner responded, "No, sir." Petitioner confirmed that he wrote all responses in his "Defendant's Statement in Support of Guilty Plea," except for two enumerating the statutory elements of his crimes. Petitioner also confirmed that he understood each question before answering it and answered each question truthfully.

The circuit court even discussed petitioner's prior psychological evaluation and whether the issues that necessitated the evaluation prevented an understanding of the plea agreement:

THE COURT: Okay, Mr. Jarrell [petitioner's trial counsel], did you believe that your client should be psychiatrically or psychologically evaluated as to either criminal responsibility or his ability to understand these proceedings?

MR. JARRELL: Your Honor, when I first got appointed to this, before we actually got to the point he was indicted, I actually felt it was necessary. We had one done. One of the issues I had when he was first arrested, I was having problems communicating. We had that, the tests came back, they found him to be competent on both issues. And I think what a lot of the problem was at the time

6

when this originally was charged, he was off his medications, there was some issues.

Since that time after we went through the testing, it's become more and more apparent to me a lot of it was medication issues, because he's been able to converse with me and go through this and they've got him stabilized over at the jail, and I think that at that time he did. As of right now, though, I feel he understands what's going on and been able to help me in my defense. It's my –

THE COURT: You know, it's my observation as well. I have seen [petitioner] throughout the neglect and abuse proceedings as well as this proceeding, and to me he's much more clearer, sharper, seems to be fully aware of what's going on, and I would agree with you. Much, much improvement since he started this process.

The court ultimately found that petitioner "clearly kn[e]w what [he was] doing" and expressed a willingness to accept the plea so long as petitioner wanted to proceed with pleading guilty. Petitioner stated, "we'll go ahead with the plea."

Petitioner proceeded to provide a factual basis for his plea. He admitted to "inappropriate sexual contact," specifically sexual intercourse, with the victim, his daughter, who lived with him at that time. Petitioner also admitted to the sexual intercourse happening more than once. The circuit court accepted petitioner's plea and found it to be "freely, voluntarily, intelligently, knowingly, and understandedly [sic] tendered unto the Court[.]"

This Court's review of petitioner's plea hearing transcript reveals that petitioner's trial counsel went through the terms of the plea agreement at length with petitioner. Petitioner's counsel stated as much on the record, and petitioner did not indicate that his counsel was being untruthful. The plea agreement, which was explained on the record at the plea hearing, set forth the penalties petitioner faced. Petitioner also correctly informed the court as to the penalty for his crimes, and he acknowledged that the circuit court was not bound by any recommendations as to parole or whether the sentences ran concurrently. The circuit court specifically stated, as was also memorialized in petitioner's plea agreement, that "sentencing is within the sole discretion of this [c]ourt[,]" and "[a]ny recommendations that may be included either in the agreement or made at the time of sentencing are simply recommendations to the [c]ourt." Consequently, the circuit court did not abuse its discretion in concluding that petitioner failed to demonstrate that he would have insisted on going to trial had he realized probation was not guaranteed. Petitioner was thoroughly informed of the plea agreement's terms, demonstrated an understanding of those terms, and acknowledged that the circuit court did not have to accept any sentencing recommendations. The circuit court also specifically considered the psychological evaluation's recommendations and, nonetheless, found that petitioner understood the terms of his agreement and willingly and voluntarily entered into it. For these reasons, we find that the circuit court did not abuse its discretion in concluding that petitioner received effective assistance of counsel and that his plea was voluntarily given.

Petitioner's next assignment of error is that the circuit court erred in concluding that his sentence was not excessive in nature. Petitioner argues that he believed he would be given an alternative sentence. Although petitioner acknowledges that his sentence is within statutory limits, he argues that, based upon the findings from his psychological evaluation and the fact that petitioner was not adequately advised by his attorney about the possible sentencing options, his sentence was excessive in nature.

In addressing this ground, we simply note that "[s]entences imposed by the trial court, if within statutory limits and if not based on some [im]permissible factor, are not subject to appellate review." Syl. Pt. 4, *State v. Goodnight*, 169 W.Va. 366, 287 S.E.2d 504 (1982). Petitioner acknowledges that his sentence is within statutory limits, and he does not argue that it was based on an impermissible factor. Accordingly, the circuit court did not abuse its discretion in finding that this ground lacked merit.

Petitioner's final assignment of error is that there was insufficient evidence of actual guilt upon which to base a guilty plea. Petitioner claims that the victim recanted to two individuals, including petitioner's mother. Thus, petitioner claims that the circuit court erred in finding sufficient evidence of actual guilt.

In a statement petitioner provided to law enforcement prior to his indictment, he admitted to the crimes of which he was later indicted. Petitioner also admitted to sexual intercourse with his young daughter on more than one occasion at his plea hearing. Finally, at petitioner's evidentiary hearing, the victim testified that she never recanted her story and that she stands by her accusations. Accordingly, we find no abuse of discretion in the circuit court's finding that a sufficient factual basis existed for petitioner's guilty plea.

For the foregoing reasons, we affirm the circuit court's October 31, 2016, order denying petitioner's petition for writ of habeas corpus.

Affirmed.

**ISSUED:** October 23, 2017

**CONCURRED IN BY:**

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

8